Charles Margett, J.
In this application to terminate the receivership and settle the account of the receiver, the parties have agreed that the court determine not only the amounts payable to the receiver and his attorney, but that the court shall make a determination as to who shall bear the costs and expenses of the receivership.
This foreclosure action was commenced on November 19, 1968 by the filing of a lis pendens and service of a summons and complaint. By order of the same date, this court appointed a receiver, who then duly qualified by filing his oath and undertaking. The receiver, by order to show cause dated November 21, 1968, then moved for leave to employ counsel and on the return date of the motion, November 25, 1968, a conference was held in chambers, at which time a stipulation dated November 22, 1968 was submitted to the court indicating that the parties agreed that an application would be made to vacate nunc pro tunc the order appointing the receiver.
The court made it manifestly clear to all present at that conference that the receivership could not be vacated mmc pro tunc, and that it would not be vacated, absent an agreement by the *841 parties to pay the receiver’s expenses and disbursements, and in order to facilitate a prompt and equitable disposition, the court directed the receiver and his attorney to “do nothing further ’ ’, so as to minimize the costs of the litigation. In addition, the court agreed to hold in abeyance the then pending motion to employ counsel, to give the parties the opportunity to make an expeditious formal application for termination of the receivership. The court having received no such application from that time until December 11, 1968, rendered its decision granting leave to the receiver to employ counsel.
Immediately thereafter the defendant Big Six Towers, Inc. moved to ‘ ‘ vacate and set aside ’ ’ the order appointing the receiver. In a memorandum decision dated January 9, 1969, the court deemed said motion to be one to terminate the receivership and settle the account of the receiver. While an adequate resolution of the issues could have been made on the papers submitted (wherein the parties do not dispute the receiver’s account), affording the parties an opportunity to offer sworn testimony and other evidence, subject to cross-examination, is more consonant with the express preference of the appellate courts of this State. (Matter of Weitling, 266 N. Y. 184; Matter of Long, 287 N. Y. 449; Automatic Bedding Corp. v. Ortner, 26 A D 2d 664.) The court, therefore, held a formal hearing on January 20,1969.
A detailed statement of the services rendered by the receiver and others has been submitted. The court recognizes the extremely diligent and capable services performed to assist the court in the preservation and maintenance of this large housing complex, albeit the services were required for only a short period of time.
The costs and disbursements of the receiver, i.e., the bond premium, the process service, and the printing, have not been questioned by the parties in their affidavits or briefs and no evidence was presented or testimony adduced at the hearing to cast doubt as to their validity. I therefore find that the following costs and disbursements have been paid or incurred by the receiver:
1. $3,400 to Andrew MeTigue & Sons for the receiver’s bond (Royal Globe Policy No. G-573138), per invoice dated November 22, 1968.
2. $992 to Zellner-Wood (process service agency) for services rendered on November 22 and November 23, 1968, in serving process on 992 tenants.
3. $130 to Econoprint, Inc. for printing 1,000 copies of the court order, per invoice No. 2035 dated November 21, 1968.
*842 The receiver requests commissions of 5% of the total rents for December, 1968 and January and February, 1969, although he actually received only two rent checks from a commercial tenant in the total amount of $9,083.34, neither check having been deposited to his account. Under ordinary circumstances, the receiver’s contention that the rents collected by the defendant Bix Six Towers, Inc., during the receivership were collected for him and are therefore “ trust funds ” might be arguable. However, in view of the intention of the parties to discontinue the receivership as early as November 22, 1968, and the direction by the court to limit the receiver’s duties on and after November 25, 1968, it would be manifestly unjust to deem the' total rents as having been received and disbursed by him. (CPLR 8004; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 8004.02.)
In any event, the amount of the receiver’s commissions is fixed by the court in the exercise of its judgment (Central Hanover Bank & Trust Co. v. Williams, 244 App. Div. 566; Cornell Assoc. v. Euston Props. Corp., 50 Misc 2d 813), and the commissions payable under CPLR 8004 represent' the maximum amount which may be paid' to the receiver. (Caso v. 323 Edgecomb Realty Corp., 25 A D 2d 637.)
A receiver is entitled to the reasonable value of his services even though no assets ever come into his hands. (Sandelman v. 21 East 63rd St. Corp., 23 A D 2d 649.) Upon the record and the testimony adduced, I find the reasonable value of the receiver’s services to be $450. (Cf. Beirne v. Habel, 20 A D 2d 891.) Parenthetically, the court notes that the said sum is less than 5% of the amount of the two checks actually received by him and which he is holding subject to the further order of this court.
Although no formal objection was made to the receiver’s request for the sum of $6,000 for his attorney’s services, I am constrained to determine the reasonable value of his services in light of the prior proceedings had herein.
The attorney for the receiver is allowed the sum of $900 for his services.
In view of the express wishes of the parties that the court determine who shall pay the foregoing commissions and expenses, and that issue having been duly submitted to the court (Stevenson v. News Syndicate Co., 302 N. Y. 81, 87; Automatic Bedding Corp. v. Ortner, 26 A D 2d 664, supra), I make the following findings of fact:
1. The plaintiff, by the terms of paragraph “five” of the mortgage, had a clear right to the ex parte appointment of the receiver. (Real Property Actions and Proceedings Law, § 1325; *843 former Civ. Prac. Act, § 975; Real Property Law, § 254, subd. 10.)
2. The defendant Big Six Towers, Inc. was in default under the terms of the mortgage at the time this action was commenced and at the time of the receiver’s appointment and said defendant did not pay the arrears in full until November 25,1968.
3. The receiver actually received and now holds two rent checks payable to him in the total sum of $9,083.34.
4. Prior to the conference in chambers on November 25, 1968, and prior to the payment by it of the total arrears, the defendant Big Six Towers, Inc., in complete and willful disregard of this court’s order of November 19, 1968, informed its tenants to ignore the said order and glibly advised them that “We have told the HDA that we have no intention to paying the costs of the receiver ”.
The intentions of the defendant Big Six Towers, Inc. notwithstanding, the foregoing findings lead irresistibly to the conclusion that the said defendant should assume the responsibility of paying for the services and expenses of the receiver and his attorney. (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 8004.06; cf. Clark v. Clark, 132 Misc. 588; but, cf. McHarg v. Commonwealth Fin. Corp., 195 App. Div. 862.)
The receiver is therefore authorized to deposit the two checks now in his possession and, after deducting the afore-mentioned fees and expenses, shall remit to the defendant Big Six Towers, Inc., the balance of said funds. (In the event that the checks cannot presently be negotiated, the defendant Big Six Towers, Inc. is directed to pay to the receiver the said fees and expenses in the total sum of $5,872.)
In all other respects the receiver’s account is approved, the receiver and the surety on the undertaking are hereby discharged, and the undertaking is canceled.