■ MEYER WECKSTEIN, Respondent-Appellant, v SHELDON L. BREITBART et al., Appellants-Respondents, and JOHN J. BOWER, as Receiver for 2 PARK AVENUE ASSOCIATES, Respondent, et al., Defendants.—Order, Supreme Court, New York County (Francis Pecora, J.), entered August 12, 1988, which, *inter alia,* awarded the receiver, John J. Bower, interim receiver's fees in the amount of $7,669,614, unanimously modified, on the law and the facts, to reduce the fee to $5 million, plus disbursements, and otherwise affirmed, without costs.

This appeal concerns the statutory commission fees awarded to the court-appointed receiver of the defendant partnerships pursuant to CPLR 8004 (a). Upon a prior remand of this matter to the trial court for further proceedings in light of the sparse record presented for appellate review (141 AD2d 347), that court accepted additional submissions from the parties and issued an 18-page decision detailing the factors it considered in awarding to the receiver the maximum 5% statutory fee, totaling $7,669,614.

We noted in our earlier decision that CPLR 8004 (a) confers upon the court the discretion to fix receiver's commissions in an amount to be determined in the exercise of its judgment, with the statutory 5% figure representing only the *maximum* amount which may be paid and that a receiver is not entitled as a matter of right to the maximum 5%, the court having discretion to fix a lesser commission as the facts and circumstances of any particular case indicate. (141 AD2d, *supra,* at 348-349.)

The detailed record now before us confirms our initial impression as to the complex nature and extremely high quality of the services rendered by the receiver.

Significantly, the receivership here became necessary because the general partners of the partnership had been removed by earlier court order for breach of their fiduciary obligations. Thus, the receiver became the de facto general partner charged with responsibility for overseeing the extensive assets owned by the partnership, including the operation and control of the 29-story commercial office building known as 2 Park Avenue which occupies the western frontage of 2 Park Avenue between 32nd and 33rd Streets in Manhattan. This required a broad and detailed investigation by the receiver into the intricate financial and business affairs of the partnership and his assumption of responsibility for the operation of the large commercial building and the making of all major business decisions affecting the affairs of the partnership including involvement with leasing and personnel matters. He retained and closely supervised a real estate management firm that regularly reported to him and to whom he gave both direction and assistance, and he similarly worked closely with, and assisted, the accounting firm employed to prepare financial statements for the partnership. The receiver filed the requisite tax returns, financial reports, SEC reports and issued advice to the limited partners as well as to the court.

Implicit in the receiver's management responsibilities and their successful discharge was the painstaking attention that he had to devote to partnership affairs and the many important judgmental determinations that were, of necessity, involved in running a major real estate enterprise. Indicative of this was his response to a significant change in the tax law which was to take effect but three months after his appointment as receiver. He immediately undertook an investigation to enable him to recommend that course of action which would ultimately be most beneficial to the limited partners in view of such change. This necessarily required a decision by him as to whether to sell the building in question since the new tax law (the Tax Reform Act of 1986) eliminated the 60% capital gains deduction for individual limited partners upon proceeds derived from the sale of property which, after the effective date of the act, would be treated as ordinary income. The receiver concluded that a sale of the building was advisable and that such sale had to be held before the end of calendar year 1986.

Despite this severe time pressure, the receiver performed remarkably in arranging a sale of the property at a price $16 million higher than any previous offer. The massive sales

effort undertaken by him involved sophisticated consideration of the tax consequences and the market trends in the real property office rental market. Moreover, the receiver performed these services and arranged the sale without the services of a broker, saving the parties an estimated $3 to $4 million brokerage fee, a figure not contested in the proceedings below. The complex closing of title took four days in late December 1986 under the spectre of the impending changes in the tax laws. As noted by the trial court, "the propriety of the sale, the extremely beneficial purchase price, or the fact that these efforts were accomplished at breakneck speed so as to maximize the benefits to the partners is not contested."

In addition to the very substantial benefits to the partnership by virtue of the sale of the property, the receiver also performed other extremely valuable services to benefit the partnership. In order to take further advantage of tax laws, he liquidated the partnership and transferred the funds and assets to a trust, enabling him to distribute a major dividend to the limited partners immediately after the sale with further subsequent distributions to be made pending contingent reserves.

Additionally, the receiver made extensive contributions by way of rendering legal services in the defense and pursuit of litigation. He recovered $9.3 million from the former general partners, representing the money judgment awarded in this action, as well as recovering other moneys wrongfully diverted by the general partners. He also defended several substantial pending actions involving the partnership, expending 1,827 hours of billable time. No payment was made for those extensive legal services nor does the receiver make a request for payment.

It is beyond dispute that the extraordinary efforts of the receiver inured to the great benefit of the partnerships and the limited partners, whose interests he zealously protected. A receiver's fee commensurate with such efforts is fully justified. While the trial court's granting of the 5% maximum commission permitted by CPLR 8004 (a) is understandable in light of the quality of the receiver's services, it failed to consider as a significant circumstance in exercising its discretion the enormity of the partnership assets at issue, the receiver having received and disbursed funds aggregating well over $300 million, and the reasonableness of the ultimate dollar amount arrived at by applying that maximum percentage. We conclude that a fee of $7,669,614 is excessive but that because of the extremely high quality of the services, the receiver is

entitled to commissions in the amount of $5 million plus disbursements and the order of the trial court is modified to that extent. Concur—Ross, J. P., Milonas, Ellerin and Rubin, JJ.