[733 NYS2d 168]

In the Matter of the Estate of RENATE HOFMANN, Deceased. CHADBOURNE & PARKE, L. L. P., Appellant; ROBERT S. WARSHAW et al., Respondents, et al., Respondents.

First Department, November 20, 2001

---

**APPEARANCES OF COUNSEL**

*Thomas J. McCormack* of counsel (*Marjorie L. Cohen* and *Matthew I. Kliegman* on the brief; *Chadbourne & Parke, L. L. P.*, attorneys), for appellant.

*Mark H. Alcott* of counsel (*Maria H. Keane* and *Julia Tarver* on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison* and *The Law Offices of David P. Seaman & Robert S. Warshaw*, attorneys), for respondents.

### OPINION OF THE COURT

RUBIN, J.

Petitioner-appellant Chadbourne & Parke, L. L. P., represented the proponents of a 1988 will and codicil executed by decedent, which named the German Catholic Church as principal beneficiary. The will was challenged by Robert Warshaw and Chase Manhattan Bank, N.A., the executors of a prior will executed in 1972. After extensive litigation, the parties entered into a broad settlement agreement, pursuant to which the church received $3,000,000 together with a half-interest in a trust comprising the residuary estate. These terms were incorporated into a decree entered July 25, 1996.

This dispute arises out of appellant's application to fix its fee for legal services rendered to the preliminary executors. Warshaw and Chase opposed the award of any fee on the grounds that appellant knowingly propounded an invalid will and committed other alleged wrongdoing. Appellant sought to dismiss the answer, asserting theories of judicial estoppel, res judicata and collateral estoppel. Appellant further relied on the pronouncement in the Surrogate's decree, to the effect that it appeared

> "to this court that legitimate issues have been raised as to which of the decedent's Wills should be admitted to probate and that the compromise is made in good faith in the context of a bona fide probate contest, is fair to the decedent in light of the circumstances and avoids further litigation and expense."

The Surrogate rejected appellant's arguments, reasoning that the question of bad faith on the part of counsel, asserted in the

answer, had not been litigated in the course of the proceedings, that the quoted preamble did not constitute a finding of fact and that issues bearing on the award of fees were expressly reserved in both the settlement agreement and the decree until the instant application.

Reversal is imperative. Respondents assume the untenable position that a will possessing sufficient validity for the purpose of distributing millions of dollars to its principal beneficiary is nevertheless completely lacking in validity for the purpose of fixing the compensation of the attorneys for the executors under that will. Respondents' wide-ranging discourse on theories of res judicata, and why they might not be implicated by the settlement, does not amelioriate the inconsistency inherent in their argument. Significantly, respondents do not suggest that they were unaware of any material fact bearing on the invalidity of the 1988 will at the time they entered into the stipulated settlement. Thus, they are unable to pursue the customary course of moving to vacate the stipulation on equitable grounds (*Matter of Frutiger*, 29 NY2d 143, 149-150).

Reversal is predicated less upon the operation of the various res judicata principles and more upon substantial public policy considerations favoring the enforcement of settlement agreements as a matter of contract. At issue in the probate proceeding was the validity of the 1988 will, to which the fixing of fees is a mere incident. By stipulating to disbursements from the estate to the will's beneficiaries, respondents have necessarily removed the issue of the will's validity from the controversy. Moreover, to adjudicate an issue resolved by stipulation, merely for the sake of deciding a collateral matter, would obviate any benefit obtained as a result of the expeditious resolution of the dispute by settlement.

> "Stipulations of settlement are favored by the courts and not lightly cast aside (see *Matter of Galasso*, 35 NY2d 319, 321) * * * Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation (*Matter of Frutiger*, 29 NY2d 143, 149-150)." (*Hallock v State of New York*, 64 NY2d 224, 230.)

It is irrelevant that Chadbourne & Parke, counsel to the preliminary executors, was not a signatory to the settlement agreement. It is material, however, that it was signed by Warshaw and by Chase, more so that it was reduced to an order

and entered (CPLR 2104; *see, Hallock v State of New York, supra,* at 230 ["strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process"]). Having agreed to resolve the dispute as to the validity of the 1988 instrument in order to avoid "the expense, delay and hazard attendant on continued litigation," respondents may not now raise the same issue, thereby introducing expense, delay and hazard into the incidental matter of fixing counsel's fees.

Litigants should bear in mind that a stipulation of settlement limiting the issues, discontinuing a cause of action or withdrawing a claim is an agreement to which the courts are party and in the enforcement of which the courts have a particular interest. Whether or not counsel should be regarded as benefitted by a settlement agreement entered into by a client, as the parties contest, is not the issue; the essential consideration is the interest of the courts in enforcing agreements that facilitate the determination of a controversy. As the Court of Appeals observed in *Mitchell v New York Hosp.* (61 NY2d 208, 214), "courts have long favored and encouraged the fashioning of stipulations as a means of expediting and simplifying the resolution of disputes. (*Salesian Soc. v Village of Ellenville,* 41 NY2d 521, 525-526.)"

Respondents place considerable reliance on language contained in the settlement agreement that nothing therein shall be construed to prevent them from objecting to payment of fees to Chadbourne & Parke, or seeking reimbursement of such fees, in connection with the firm's representation of the preliminary executors. However, the setting of legal fees always requires that counsel justify the sums charged (*see, Matter of First Natl. Bank v Brower,* 42 NY2d 471, 474; *Morgan & Finnegan v Howe Chem. Co.,* 210 AD2d 62, 63; *Matter of Jackson,* 120 AD2d 309, 315-316, *lv denied* 69 NY2d 608), and the right of an interested party to contest whether the amount billed was reasonable does not entail the right to assert an issue that party has agreed to settle. Thus, the decree provides for the setting of fees after the firm has filed its affidavit of services rendered. This provision preserves no more than the right of the executors to contest the reasonableness of the amount charged for representation; it does not operate to preserve their right to contest the very legitimacy of the representation provided by counsel.

A proceeding to set attorneys' fees is deemed to be a separate and distinct action (*Matter of Evans,* 177 Misc 381, 382 [*revd*

*on other grounds* 264 App Div 645, *appeal dismissed* 289 NY 840], citing *Matter of Matheson*, 265 NY 81), thereby implicating the doctrine of res judicata. An order of discontinuance effecting settlement on the merits is accorded the same res judicata effect as the entry of judgment on the merits (*Nottenberg v Walber 985 Co.*, 160 AD2d 574, 575, citing *Forte v Kaneka Am. Corp.*, 110 AD2d 81, 85). As this Court noted in *Boorman v Deutsch* (152 AD2d 48, 53, *lv dismissed* 76 NY2d 889):

> "The concept of res judicata embraces not only those matters which are actually litigated before a court but also those relevant issues which could have been litigated (*Schuylkill Fuel Corp. v Nieberg Realty Corp.*, 250 NY 304), including jurisdiction (*Angel v Bullington*, 330 US 183; *Johnson v Muelberger*, 340 US 581; *Reich v Cochran*, 151 NY 122). The concept of collateral estoppel is somewhat narrower, requiring two distinct elements: 'that an issue in the present proceeding be identical to that necessarily decided in a prior proceeding, and that in the prior proceeding the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue' (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276). 'Properly utilized, it also serves to conserve the resources of courts and litigants. Because the doctrine is based on general notions of fairness there are few immutable rules' (*Gilberg v Barbieri*, 53 NY2d 285, 291, *supra*). As stated in *Staatsburg Water Co. v Staatsburg Fire Dist.* (72 NY2d 147, 153), 'the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings (*see, Gilberg v Barbieri*, *supra*, at 291-292; *People v Berkowitz*, 50 NY2d 333, 344; *Matter of Venes v Community School Bd.*, 43 NY2d 520, 524).' "

Even entertaining respondents' argument on the narrower basis of collateral estoppel, the interest in upholding the integ-

rity of the stipulated settlement and, thus, conserving the "resources of the court and the litigants, and the societal interests in consistent and accurate results" (*Staatsburg Water Co. v Staatsburg Fire Dist., supra*, at 153), militates against respondents' attempt to revisit the question of the validity of the 1988 will. Res judicata operates to bar any claim "arising out of the same transaction or series of transactions * * * even if based upon different theories" (*O'Brien v City of Syracuse*, 54 NY2d 353, 357). The offering of the 1988 will for probate and the services rendered by appellant to the proponents in that proceeding are inseparable. Likewise, the validity of the will is a question that could have been raised—and was actually raised—in the course of the proceeding. Thus, respondents cannot implicitly concede the validity of the 1988 will for the purpose of discontinuance and revive the issue for the purpose of challenging counsel's fees.

Logically, either there is arguable validity to the 1988 will so as to warrant payment to its beneficiaries and, collaterally, payment to counsel for services rendered to its executors, or the instrument is so tainted by fraud that neither settlement nor payment of counsel fees is warranted. If the stipulation was entered into as the result of fraud, collusion or mistake, respondents' obvious remedy would be to seek vacatur. However, it appears that respondents Warshaw and Chase were aware of the material facts surrounding the offering of the will for probate, and any misgivings they may have entertained as the result of this knowledge were not sufficient to deter them from stipulating to the settlement. Therefore, the option of moving to vacate the stipulation is unavailable to them.

While there is no serious disagreement that the position taken by appellant in favor of the admission of the 1988 will to probate was fraught with difficulty, it remains that respondents acceded to the distribution of a substantial portion of the estate to the primary beneficiary under that instrument. It would be anomalous to punish counsel for its success in exacting such concession by permitting a conceding party to revive the conceded issue to attack counsel's right to collect its fee. The interpretation urged by respondents would open the floodgates to collateral attack upon counsel for any party who was successful in negotiating a favorable settlement. To permit such litigation would have a chilling effect on the settlement of marginal cases, in contravention of the well-established policy of encouraging the settlement of disputes, and would embroil the

courts in unnecessary litigation of ancillary issues. This Court declines to establish a doubtful precedent whereby a disaffected litigant is permitted to contest the propriety of maintaining the very action necessarily resolved against it by stipulation as a means of denying fees to the attorney for a successful party.

Accordingly, the order of the Surrogate's Court, New York County (Eve Preminger, S.), entered February 2, 2001, which, to the extent appealed from as limited by the briefs, denied the motion by petitioner-appellant Chadbourne & Parke, L. L. P., to dismiss the answer of objectors-respondents Robert Warshaw and Chase Manhattan Bank, should be reversed, on the law, without costs, the answer stricken, and the matter remanded to Surrogate's Court for further proceedings.

LERNER, J. P., SAXE and MARLOW, JJ., concur.

Order, Surrogate's Court, New York County, entered February 2, 2001, reversed, on the law, without costs, the answer stricken, and the matter remanded to Surrogate's Court for further proceedings.