[803 NYS2d 71]

In the Matter of ADAM JAKUBOWICZ, Respondent, v A.C. GREEN ELECTRICAL CONTRACTORS, INC., et al., Respondents, and CHAIM ROZENBLATT, Respondent. DUDLEY GAFFIN, as Receiver, Appellant.

In the Matter of ADAM JAKUBOWICZ et al., Respondents, v 709 9TH AVENUE, LLC, et al., Respondents, and CHAIM ROZENBLATT et al., Respondents. DUDLEY GAFFIN, as Receiver, Appellant.

First Department, November 1, 2005

### APPEARANCES OF COUNSEL

*Dudley Gaffin*, New York City, pro se, and *Ronald Yang*, New York City, for Dudley Gaffin, appellant.

*Krol & O'Connor*, New York City (*Igor Krol* of counsel), for Adam Jakubowicz and others, respondents.

*Blank Rome LLP*, New York City (*Lawrence M. Rosenstock* of counsel), for Chaim Rozenblatt and others, respondents.

### OPINION OF THE COURT

Tom, J.P.

A receiver, appointed by Supreme Court to effectuate the dissolution of nine corporations and dispose of their assets, appeals from an order denying him a commission in excess of that mandated by Business Corporation Law § 1217. Because the statutory language is plain and leaves no room for judicial interpretation, this Court is constrained to affirm the ruling.

In March 2002, pursuant to Business Corporation Law § 1202 (a) (1), Dudley Gaffin, Esq. was appointed receiver in the dissolution of a 20-year business partnership between Adam Jakubowicz and Chaim Rozenblatt, who together operated an electrical contracting business and owned, through separate corporations, eight buildings on the West Side of Manhattan. The receiver states that, "by the spring of 2002, Adam and Chaim had already been in court for more than two years, their partnership enmeshed in a tangle of claims, cross-claims and mutual allegations of impropriety." Despite what is described as their "fierce, mutual hatred and distrust," Gaffin was able to negotiate a settlement on the eve of the judicial sale of the prop-

erties, thereby saving each of the two partners some $1 million (in the receiver's own estimation). The court thereupon approved the stipulated settlement and vacated the orders of dissolution.

Gaffin moved to approve his accounting and fix his commission and expenses in the amount of $167,500, based upon the value of the real property and the amounts collected, including rent and other receivables. In January 2003, by stipulation of the parties, the eight properties were valued at $12 million, but they were purported to have been worth up to $20 million in the opinion of unnamed real estate experts. Assigning a fair market value of $15 million to the properties, Gaffin asked the court to award him 1% of this sum, or $150,000.[1] In support of the motion, Gaffin maintained that he was entitled to be compensated for the "special service" he rendered during the course of the proceedings (citing *Weckstein v Breitbart*, 154 AD2d 305 [1989]; *Precision Dynamics Corp. v 601 W. 26 Corp.*, 51 AD2d 907 [1976]).

In addition, Gaffin sought 5% of the approximately $350,000 in rents collected and other receipts, or $17,500, pursuant to CPLR 8004 (a),[2] which provides for a receiver's commission "not exceeding five per cent upon the sums received and disbursed by him." Gaffin contended that this Court permitted such a departure from Business Corporation Law § 1217 to determine a receiver's commission in *State of New York v Chatsworth Realty Corp.* (284 AD2d 260 [2001], *lv denied* 97 NY2d 604 [2001]).

The receiver's application was opposed by the partners, particularly Jakubowicz, who maintained that Gaffin had merely delayed the proceedings by his attempts to mediate a settlement and had engaged in professional misconduct. Jakubowicz argued that the receiver should not be permitted to

---

1.   Where, as here, the estate to be distributed is significant, the commission afforded by Business Corporation Law § 1217 amounts to a little more than 1% of "the sums received and disbursed."

2.   CPLR 8004, "Commissions of receivers," provides, in relevant part: "(a) Generally. A receiver, except where otherwise prescribed by statute, is entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him, as the court by which he is appointed allows, but if in any case the commissions, so computed, do not amount to one hundred dollars, the court[ ] may allow the receiver such a sum, not exceeding one hundred dollars, as shall be commensurate with the services he rendered."

"impose himself upon an objecting, unwitting client, self-define his own role over and beyond that set forth in the order of appointment, and then demand . . . compensation at a self-prescribed rate."

In reply, Gaffin argued that the court had discretion to "make an award based upon the special benefit to the parties as well as the quality of the services rendered," noting that "had the sale taken place, I would have been entitled to my one (1%) percent commission on the amount raised." As a policy consideration, he argued, "For the court to deprive me of a commission on the value of these properties and assets will mean that every Receiver will oppose every settlement proposed by the warring parties wherever and whenever the settlement will deprive him/her of a fee."

For some 300 hours of service to the court, rendered over a period of 11 months, Gaffin was awarded a commission of only $5,783.33 based on a total of $378,336.84 received and disbursed by him. The court disregarded the opposing arguments advanced by Jakubowicz, which it characterized as "unfounded and speculative," and acknowledged the receiver's efforts to expedite the proceedings in spite of the partners' obvious mutual hostility. Nevertheless, the court noted that Business Corporation Law § 1217, unlike CPLR 8004, makes no provision for payment of compensation based on the value of a receiver's services.

Because the receiver was appointed pursuant to Business Corporation Law article 12, his commission is governed by the provisions of Business Corporation Law § 1217.[3] Moreover, even under CPLR 8004 (a), a receiver's commission is not payable on the value of the property administered. Rather, as this Court stated in *New York State Mtge. Loan Enforcement & Admin. Corp. v Milbank Site One Houses* (151 AD2d 424, 425 [1989]):

---

3. Business Corporation Law § 1217 provides, in pertinent part:
"(a) A receiver shall be entitled, in addition to his necessary expenses, to such commissions upon the sums received and disbursed as may be allowed by the court, as follows:
"(1) On the first twenty thousand dollars, not exceeding five percent;
"(2) On the next eighty thousand dollars, not exceeding two and one-half percent; and
"(3) On the remainder, not exceeding one percent.
"(b) If the commissions of the receiver so computed do not amount to one hundred dollars, the court in its discretion may allow such sum not exceeding one hundred dollars as shall be reasonable.

"a commission is due upon the total amount which passes through the receiver's hands . . . In a simple case, the amount received and the amount disbursed will be the same (*City of New York v Big Six Towers*, 59 Misc 2d 839). Where it is not, a commission is payable as a percentage of what the court 'decided was the value of the assets which came into the hands of the receivers, and which were disbursed or transferred by them' (*Betz v New Jersey Refrig. Co.*, 231 App Div 553, 558)."

While the receiver is correct in stating that, had the properties been sold, he would have been entitled to 1% of the amount received, it is dispositive that the properties were not sold; control then reverted to the corporations that owned them. This Court has construed the schedule of payment contained in Business Corporation Law § 1217 to represent the maximum payable as a commission, subject to reduction upon consideration of the attendant facts and circumstances, the nature of the services rendered, the time expended and the sums received and disbursed (*Matter of T. J. Ronan Paint Corp.*, 98 AD2d 413, 418 [1984]). As the Court of Appeals has noted, the statute is subject to strict construction, and the payment of commissions in excess of the statutory rate is "contrary to its plain meaning" (*Matter of Kane [Freedman—Tenenbaum]*, 75 NY2d 511, 516 [1990]). Reimbursement for expenses, including the services of a managing agent, is recoverable. The statute, however, does not provide compensation for management services performed by the receiver himself (*Goldman v Bernardini*, 246 AD2d 510 [1998], *lv dismissed* 92 NY2d 919 [1998]). Thus, had the receiver hired a mediator to perform the same services, he could have been reimbursed for the mediator's fee (*see Sun Beam Enters. v Liza Realty Corp.*, 210 AD2d 153 [1994] [counsel fees]; *Kraizberg v Frank*, 170 AD2d 306, 307-308 [1991] [same]).

On appeal, the receiver argues that this Court should construe Business Corporation Law § 1217 similarly to SCPA article 23, which, he notes, provides for the fixing of the commission of a receiver or other fiduciary "calculated upon the total value of the property placed in their hands and not merely cash monies received." This statute is clearly distinguishable, however. Under SCPA 2307, the meaning of "receiving and paying out all sums of money" is stated in subdivision (2): "The value of any property, to be determined in such manner as directed by the court and the increment thereof, received, distributed or delivered, shall be considered as money in computing commis-

sions." The provision that property be "received, distributed or delivered" stands in marked contrast to the language of Business Corporation Law § 1217 (a), which provides for a commission based "upon the sums received *and* disbursed" (emphasis added). The use of the conjunctive in the Business Corporation Law, as opposed to the disjunctive in the SCPA, must be regarded as dispositive (*see Adkins v City of New York*, 43 NY2d 346, 351 [1977] ["the statute being worded in the conjunctive, both conditions must be satisfied"]). Moreover, the language ultimately incorporated in subdivision (2) was not included in the predecessor to the SCPA, as originally drafted, but was added by amendment (L 1916, ch 596; *see Matter of Adamson*, 106 Misc 113, 122 [1919]). Significantly, the Legislature did not see fit to similarly amend the Business Corporation Law to allow commissions to be calculated upon the value of real property coming into the hands of the fiduciary (*id.*).

Finally, Gaffin misinterprets our decision in *Chatsworth Realty* (284 AD2d 260 [2001]), wherein we noted that although an earlier ruling had stated that the case arose under Business Corporation Law § 1202 (a) (3) (*Abrams v Chatsworth Realty Corp.*, 143 AD2d 596 [1988], *appeal dismissed* 73 NY2d 995 [1989]), five separate motions seeking interim commissions in accordance with CPLR 8004 had gone unopposed by the defendant. It is apparent that the decision does not represent a departure from the strict application of Business Corporation Law § 1217, but rests instead on the doctrine of laches. We stated, "Having inexcusably slept upon its rights, defendant may not now raise the issue of whether the award of commissions to the receiver under CPLR 8004 is appropriate" (284 AD2d at 261).

Gaffin ceased to represent the estate upon submission of the instant motion to approve his accounting and fix his commission. As the receiver concedes, he is not entitled to reimbursement for legal fees incurred in connection with the submission of the final accounting. Similarly, reimbursement is unavailable for the time expended by counsel in defending against accusations of professional misconduct made by Adam Jakubowicz in opposition to the motion. Unlike the factual circumstances of *Jessup v Smith* (223 NY 203 [1918] [trustee]), upon which Gaffin relies, there was no attempt to wrest control from the appointed administrator and place it in the hands of another, requiring services by counsel deemed beneficial in preserving the trust. The receiver has provided no other authority to sup-

port his effort to obtain compensation for legal expenses incurred in establishing his right to a commission, and this Court is aware of none.

Supreme Court properly reduced the sum due for counsel's services rendered in connection with the intended dissolution. Duplicate hours were billed for January 2nd, 3rd, and 6th, 2003. However, the submitted time sheets indicate that counsel billed four hours for January 2nd, two hours for January 3rd and 3.5 hours for January 6th. Thus, the total should have been reduced by 9.5 hours, not 13.5 hours, as deducted by the court, and the award for legal fees should be modified to include an additional $1,000 (four hours at $250 an hour).

Although we are required to give literal application to the provisions of Business Corporation Law § 1217, we cannot detract from the value of the services rendered by the receiver, which were applauded by Supreme Court and acknowledged, albeit reluctantly, by the parties.[4] The statutory reimbursement scheme contemplates the actual dissolution of the corporation and the distribution of corporate assets by the receiver; it does not address the situation where dissolution is avoided. In this case, the receiver was able to extract a negotiated settlement and so preserve, more effectively than by means of a judicial sale, the value of the corporate assets for the share owners. This outcome is favorable both to the parties and to the court. As a matter of policy, settlement is favored as a means of facilitating the resolution of disputes and preserving judicial resources (*see Mitchell v New York Hosp.*, 61 NY2d 208, 214 [1984]; *Matter of Hofmann*, 287 AD2d 119 [2001]). These salutary purposes will not be promoted by a compensation provision that dissuades a receiver from attempting to settle a dispute between share owners in order to preserve his entitlement to an adequate commission for the services he has rendered.

In sum, the remedy lies not with the courts but with the Legislature. We strongly urge that consideration be given to amending Business Corporation Law § 1217 to afford a court discretion to fix a receiver's commission based upon the value of the services rendered in those cases where, as here, dissolution

---

4. The decision concludes, "In closing, this court would be remiss in not acknowledging the receiver's invaluable assistance in successfully expediting these proceedings tactfully, notwithstanding the open hostility of the litigants towards each other; however, it is barred from basing his compensation on the worth of these services however useful they may have been."

and the consequent disposition of corporate property are not effectuated (particularly as the result of a negotiated settlement), subject to limitation by reference to a percentage of the total assets administered.

Accordingly, the order of the Supreme Court, New York County (Nicholas Figueroa, J.), entered May 7, 2004, insofar as it fixed the receiver's commission at $5,783.33 and denied certain compensation for counsel fees relating to his motion for approval of his accounting, should be modified, on the law, to the extent of increasing the award for counsel fees by $1,000 and, except as so modified, affirmed, without costs.

ELLERIN, J. (dissenting). While I agree that ordinarily the statute appears to limit the receiver's fees to the schedules in Business Corporation Law § 1217, I believe that the unique circumstances of this case require additional relief. Indeed, the motion court itself acknowledged "the receiver's invaluable assistance in successfully expediting these proceedings tactfully, notwithstanding the open hostility of the litigants towards each other," but indicated that it was "barred from basing his compensation on the worth of these services however useful they may have been." This encomium merely touches upon the extraordinary amount of time and inordinate skill required to resolve the myriad disputes between the bitterly warring and litigious defendant partners who apparently have been able to overcome their animosity only on the issue of limiting the receiver's fees.

A brief recital of some of the services rendered by the receiver demonstrates their nature and value in preserving the assets of the corporations despite the best efforts of the warring partners to deplete these assets by way of unnecessary litigation fueled by their animosities.

The receiver's time sheets reflect that he and his staff expended more than 396 hours performing work in connection with these actions. He spoke to counsel for the respective parties and met with counsel and the parties in an effort to settle the disputes or, in the alternative, to obtain documents each claimed were needed by the other for the pending actions. During these conversations and meetings, he learned about the complexity of the dispute and other pending actions and was informed of the parties' desire to settle the matter rather than selling the properties, which would be very costly to them.

The receiver also learned that settling the matter would involve all nine entities, which these discussions with counsel

and the parties disclosed were worth more than $15 million. This value was later confirmed in the receiver's discussions with brokers and their clients to whom he showed the properties before the auction sale, and is the reason that he was required to post a $2 million bond in the first action in which he was collecting approximately $25,000 per month in rent.

After he was appointed in Action No. 1, the receiver had difficulty finding a managing agent because of the low rent roll, which was due to the many vacancies in the buildings and petitioner Jakubowicz's and respondent Rozenblatt's refusal to pay for the use and occupancy of the spaces they occupied. The receiver permitted Jakubowicz to continue managing the properties that he had managed before the receiver's appointment, but because Jakubowicz was continually late in responding to the receiver's requests, the receiver discontinued his services and retained another managing agent.

In addition to managing the properties and preparing them for sale, the receiver helped the parties, at their request, resolve a myriad of issues, including accusations of misconduct, that arose in connection with court orders directing the individual parties to account to each other. He also continued to supervise the operation of all the entities, including the electrical corporation, and entered into an agreement with Jakubowicz to complete a contract between A.C. Green and the Medical Examiner of the City of New York, under which Jakubowicz and Rozenblatt were personally obligated under a bond of $1 million.

The receiver arranged to give the parties an opportunity to review the voluminous records that had come into his possession, some of which the parties had withheld from each other, to enable them to obtain the necessary data to settle the remaining litigation issues. He continued to try to settle the dispute, assisting the parties in obtaining records for discovery, meeting with the principals and their assistants to organize the documents, holding conversations with the mortgagees, notifying the creditors by publication in two newspapers, and helping to obtain documents from computer records. He negotiated a settlement of the dispute as to the procedure for a court-ordered accounting, which involved conversations with counsel and attendance at court hearings and conferences concerning the four properties that were the subject matter of Action No. 2 even before he was appointed in that action.

The receiver had discussions with chief counsel of a title company to fashion a method of selling the properties so that

the buyer(s) would receive title insurance. He prepared and arranged for the publication of a notice of sale of the properties, met with more than 50 prospective brokers and investors and had telephone conversations with many more concerning the prospective sale, and showed the properties to groups of prospective buyers on at least six occasions. When the auction scheduled for January 7, 2003 was stayed on January 6, he notified almost 50 people that day that the auction was canceled and he went to the court on the auction date to tell those who appeared that the auction was suspended.

The receiver expended a vast amount of time in assisting the parties to resolve their disputes. By playing so significant a role in the parties' settlement, he averted the sale of the subject properties, thereby preserving the parties' assets. His compensation as calculated according to the statutory schedules simply is not commensurate with his extraordinary efforts. Indeed, the $5,783.33 commission thus computed is manifestly unfair; fair compensation would be an award for the reasonable value of the services he rendered (*see American Sav. Bank v Saleski Dev., Inc.*, 812 F Supp 28, 32 [US Dist Ct, SD NY 1993]), and I would remand the matter for a determination thereof.

It is undisputed that, as respondent Rozenblatt conceded on appeal, "[i]n his capacity as a mediator, negotiator or special master, Mr. Gaffin did spend an extraordinary amount of time on his extraordinary activities." The motion court explicitly recognized that this extraordinary work benefitted the parties. Had the receiver hired a mediator to perform the dispute-resolution functions he performed, he likely would have been reimbursed those costs (*see e.g. Sun Beam Enters. v Liza Realty Corp.*, 210 AD2d 153, 153 [1994] [receiver authorized to retain counsel for all reasonable purposes in connection with receivership was entitled to attorneys' fees and costs where "the facts, including extensive motion practice concerning violations and disrepair of the subject property, established that counsel's services were warranted"]; *Kraizberg v Frank*, 170 AD2d 306, 307-308 [1991] ["the IAS court was well within its authority to ratify the hiring of attorneys by the receiver in circumstances which the IAS court determined were 'pregnant' with unusual circumstances"]). Indeed, had he been appointed under CPLR 8004, which permits an award that exceeds the statutory maximum under the doctrine of quantum meruit if the statutory maximum would be "manifestly unfair," the receiver undoubtedly would have been compensated for the reasonable

value of the services he performed (*Federal Home Loan Mtge. Corp. v S.E.A. Yonkers Assoc.*, 869 F Supp 187, 188 [US Dist Ct, SD NY 1994], quoting *American Sav. Bank*, 812 F Supp at 32). In the circumstances, it would be manifestly unfair to limit his compensation according to the fee schedules in Business Corporation Law § 1217.

As Lieutenant Governor T. Whitfield Davidson, appointed a federal District Court Judge for the Northern District of Texas, said, "A sound principle of justice is that there must never arise a wrong for which there is not a tribunal wherein there is a remedy. That is in fact the spirit of equity that has come down to us through the ages." This Court has deviated from a strict interpretation of Business Corporation Law § 1217 where justice warranted it (*see State of New York v Chatsworth Realty Corp.*, 284 AD2d 260 [2001], *lv denied* 97 NY2d 604 [2001]). Justice warrants that we do so again here.

ANDRIAS, MARLOW and SWEENY, JJ., concur with TOM, J.P.; ELLERIN, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered May 7, 2004, modified, on the law, to the extent of increasing the award for counsel fees and, except as so modified, affirmed, without costs.