OPINION OF THE COURT
Charles Edward Ramos, J.
This court’s prior decision, dated June 22, 2010, was a draft opinion, signed in error. It is accordingly hereby vacated. The following corrected decision is submitted in its place and stead. The order settled on the 15th day of October 2010, and entered October 26, 2010 is also hereby vacated.
*354 Motion sequences 002 and 003 are consolidated for disposition. In sequence 002, plaintiff Soldiers’, Sailors’, Marines’ and Airmen’s Club, Inc. (the Club) moves, pursuant to CPLR 3212, for summary judgment on its third cause of action.[1] Additionally under sequence 002, fourth-party defendant Chicago Title Insurance Company (Chicago Title) moves, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the second cause of action in the fourth-party complaint.[2] In sequence 003, defendant and third-party plaintiff Carlton Regency Corporation (the co-op), and fourth-party defendants Marc Putterman and David May move to dismiss, pursuant to CPLR 3211 (a) (1) and (7), certain counterclaims asserted against the co-op, and the fourth-party complaint against Putterman and May, brought by fourth-party plaintiffs, James Conforti, III, and Dean Lyras.
Background
Since 1927, the Club has run a charitable not-for-profit corporation that provides facilities and overnight accommodations to military personnel and retirees on Lexington Avenue in New York City. The Club purchased two connected buildings located at 281-283 Lexington Avenue (the clubhouse), and in 1940, purchased the adjacent building located at 285 Lexington Avenue.
In 1972, the Club entered into a series of transactions with two developers, James Conforti, Jr., and Stephen C. Lyras (the developers),[3] whereby the developers purchased the 285 Lexington Avenue property for $227,000. In addition, under an initial 50-year ground and air rights lease, with two options to renew for 25 years each (the lease), the Club leased the clubhouse to the developers, who, in turn, subleased the clubhouse back to the Club rent free for 25 years with one 15- *355 year renewal term that is set to expire on March 12, 2013 (the sublease).
The parties also entered into an option agreement entitled “Demised Premises Contract” (the option agreement), which granted the Club the option to sell the clubhouse to the developers for $500,000 at any time before the termination of the sublease.
The transactions were authorized by court order in 1973. In 1980, the developers built a residential tower at 137 36th Street, adjacent to the clubhouse, using the air rights that were acquired under the lease. That tower, along with a neighboring residential tower located at 136 East 37th Street (also owned by the developers), were thereafter converted to cooperative ownership. As part of the conversion, the developers assigned their rights in the lease, sublease, and option agreement to the cooperative apartment corporation eventually known as defendant, the co-op.
As the renewal term of the sublease purportedly comes to an end for the 10-year balance of the original 50-year term of the lease, the Club may lose the use of the clubhouse. This dispute followed.
Discussion
In its motion for summary judgment, the Club seeks to invalidate the lease and the option agreement pursuant to New York’s rule against perpetuities (or the rule) (EPTL 9-1.1).
Summary Judgment
The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient evidence to eliminate any material issues of fact as to the claim or claims at issue (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
Once the prima facie showing has been made, the party opposing a motion for summary judgment bears the burden of “producting] evidentiary proof in admissible form sufficient to require a trial of material questions of fact” (Amatulli v Delhi Constr. Corp., 77 NY2d 525, 533 [1991]).
*356 Threshold Issues
The sons raise a number of threshold issues that will be addressed first.
Res Judicata, Collateral Estoppel, etc.
After the Club’s board of directors approved the sale and lease transactions, the parties sought court approval as required under the Not-For-Profit Corporation Law (the prior proceeding). In the prior proceeding, the Club was obligated to make a legal and factual showing that it benefitted from the transactions. An evidentiary hearing was held before a law school dean, and his report was later confirmed by the court, holding that the lease, sublease, and option agreement were beneficial to the Club. Based on the prior proceeding, the sons seek to bar the Club’s action on the basis of res judicata and collateral estoppel.
Generally, the doctrine of res judicata embraces not only those matters that are actually litigated before a court, but also those relevant issues that could have been litigated (Matter of Hofmann, 287 AD2d 119, 123 [1st Dept 2001]). The concept of collateral estoppel is somewhat narrower, requiring two distinct elements: that an issue in the present proceeding be identical to that necessarily decided in a prior proceeding, and that in the prior proceeding the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue (id.). However, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of resources of the court and the litigants, and the societal interests in consistent and accurate results (id.). No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings (id.).
First, the record is clear and the sons do not contest that the issue of perpetuities was never raised or addressed in the prior proceeding. Therefore, collateral estoppel is inapplicable. Second, because public policy is in favor of barring perpetuities, the Club’s argument must be addressed (see Barnes v Oceanus Nav. Corp., Ltd., 21 AD3d 975 [2d Dept 2005] [the trial court has the inherent power to set aside a prior decision on public policy grounds for an overriding and persuasive reason, such as under the rule against perpetuities]).
*357 The remaining estoppel arguments raised by the sons have been carefully considered and deemed without merit.[4]
Rule against Perpetuities
The Lease
In January 2008, this court denied the co-op’s CPLR 3211 motion to dismiss the Club’s public policy claims. As discussed therein, the holding in Warren St. Assoc, v City Hall Tower Corp. (202 AD2d 200 [1st Dept 1994]) potentially invalidates the two 25-year renewal options contained in article 8 of the lease because they could possibly be exercised after the initial lease term expires.[5]
Restatement (First) of Property § 395 provides that
“[w]hen a lease limits in favor of the lessee an option exercisable at a time not more remote than the end of the lessee’s term, (a) to purchase the whole or any part of the leased premises; or (b) to obtain a new lease or an extension of his former lease, then such option is effective, in accordance with the terms of the limitation, even when it may continue for longer than the maximum period” (emphasis added).
The renewal option in article 8 of the lease requires the co-op to give the Club written notice of its election to renew, at least one year prior to the expiration of the existing lease term. If, however, the co-op fails to give such timely notice, the Club is required to give notice to its mortgage lender (the lender), because the leasehold is collateral for the mortgage loan. The lender then has the right to assume the lease and exercise the co-op’s renewal option within 30 days thereafter (lease § 8.01). This provision can potentially violate section 395 of the Restatement, because if the Club fails to give the lender notice within the term of the lease, the lender would purportedly have the right to renew an expired lease in perpetuity (see also EPTL 9-1.1).
However, upon a more thorough record and a more developed comprehensive argument, the sons correctly argue that the lease *358 confines exercise of the two 25-year renewal options to the lease term and to be applied consecutively without interruption. Section 8.01 provides that
“[tjenant [co-op] may renew the initial term hereby granted for not more than two consecutive terms of 25 years . . . the [lender] may ‘elect that this Lease be renewed for the relevant renewal term on the same terms, covenants and conditions and with the same effect as though such options had been exercised by the Tenant [co-op] as herein provided.’ ”
It follows that the Club’s renewal options can be exercised for two consecutive 25-year terms. The term “consecutive” leaves no ambiguity. Therefore, the lender cannot exercise its option to renew after the expiration of the initial term of the lease because the renewal term must commence consecutively with, and without interruption from, the preceding term, regardless of whether the Club tenders notice to the lender.
The Club argues that in both Warren St. Assoc. (202 AD2d 200 [1994]) and Bleecker St. Tenants Corp. v Bleeker Jones LLC (65 AD3d 240 [1st Dept 2009]), renewal terms were held to be invalid even though they were for consecutive terms. However, in both cases, the leases succinctly and unequivocally provided a right to renew the lease after the expiration of the lease term, a contractual right not present here. In this case, the only scenario that would allow for the lease to be renewed after its expiration is the breach of multiple notice provisions. Such a scenario is clearly beyond the parties’ contractual intent, and is inconsistent with the presumption that the creator intended the estate to be valid (EPTL 9-1.3 [a]-[b]).
For example, in Warren St. Assoc. (202 AD2d 200 [1994]), the lease provided for a 50-year term with six 25-year renewal options after the original term, to be exercised by the tenant by notifying the landlord at least three months before the expiration of the term then in effect. However, the clause included the following provision that invalidated the renewal options under the lease:
“(it being expressly understood, however, that a failure by Tenant to serve any such notice shall not extinguish the renewal option to which same would have related, and such renewal option will only be considered extinguished and not exercised after Landlord notifies Tenant that Tenant has not so exercised same and Tenant, within 40 days after *359 receipt of such notice, still does not serve a notice exercising such option). If Tenant serves a renewal notice, the term hereof shall be deemed automatically renewed and extended.”
Similarly, in Bleecker St. Tenants Corp. (65 AD3d at 241-242), the lease provided for an initial term of 14 years, with nine options to renew for consecutive 10-year periods, exercisable through a series of notices. The tenant could exercise the renewal options by giving written notice at least six months before the end of the preceding term. The lease also provided that the landlord would send the tenant a “reminder notice” regarding the option, seven months before the end of the preceding term, if the tenant had not already exercised the option. In the event that the landlord did not send the seven-month notice, and the tenant did not exercise the option with six months’ notice, then the renewal option would remain in effect until such time as the landlord sent the tenant notice of its right to exercise the option. Once the landlord sent the tenant this final written notice, the tenant would have 60 days within which to exercise the renewal option. The lease further provided that, in the event that the renewal option went unexercised and the landlord did not send the 60-day notice, then, “[i]f the term shall have expired, Lessee shall remain in possession as a month-to-month tenant” until such time as the landlord sent the 60-day notice. The renewal option was held to be invalid under EPTL 9-1.1 (b) because it could be exercised post-term in perpetuity.
In contrast, the First Department in Double C Realty Corp. v Craps, LLC (58 AD3d 480 [1st Dept 2009]) avoided application of the rule against perpetuities. There, the original lease term was 30 years, with a provision permitting the lessee, at its option, to extend the term of the lease for five-year periods after the expiration of the initial term. The options were to be exercised by written notice to the lessor at least one year before the expiration of the term. If a renewal option was exercised, the provision specified that the lease “shall remain in full force and effect, changed only as to the matters specified in this paragraph” (such as the amount of rent payable). The lease renewal provision did not provide for any exercise of the renewal options after the expiration of the lease term; it simply provided for exercise of the option during the lease term. Since the renewal option clause originated in the lease and was not capable of separation from the lease, it qualified as an option appurtenant and therefore did not run afoul of the rule against perpe *360 tuities (see also Deer Cross Shopping v Stop & Shop Supermarket Co., 2 Misc 3d 401 [Sup Ct, NY County 2003] [a renewal option in a lease was held to he valid even though it contained an explicit 60-day extension of the lease term past the original expiration date for notice to be given by the landlord because the renewal options were appurtenant to the lease and the lease was held not to have expired during the extended period]).[6]
Here, the absence of an express right to exercise the renewal term beyond the expiration of the lease renders EPTL 9-1.1 inapplicable. Furthermore, the renewal option originates in one of the lease provisions and, thus, is incapable of separation from the lease (Symphony Space, 88 NY2d at 480). Therefore, the Club’s motion for summary judgment is denied as to this issue as a matter of law, the third cause of action dismissed,6 [7] and the Club is not entitled to a declaration that the renewal option is invalid.
Alternatively, the Club argues that the entire lease violates the rule because certain provisions constitute an unreasonable restraint on alienation. More specifically, the Club points to the lease provision that obligates the Club to perform maintenance and repairs on the clubhouse during the term of the lease, no matter if it is in occupation. The common-law rule against restraints on alienation limits the power of an owner to create uncertain future estates by forbidding owners to impose conditions on conveyances that block the grantee from freely disposing of the property (Metropolitan Transp. Auth., 67 NY2d at 161). “Unlike the statutory Rule against Perpetuities, which is measured exclusively by the passage of time, the common-law rule evaluates the reasonableness of the restraint” (Symphony Space, 88 NY2d at 476).
*361 The Club, as landlord, is responsible for the “operation, repair, replacement and maintenance” of the clubhouse for the duration of the lease (see lease art 5.01). This obligation puts the Club in the very reasonable position of virtually every other landlord in New York City.[8] The Club fails to persuade this court how it constitutes an unreasonable restraint on alienation. Therefore, the argument must be rejected.
The Option Agreement
The option agreement granted the Club the option to sell the clubhouse properties to the developers for $500,000 at any time before the termination of the sublease.
The Club claims that the option agreement creates a remote vesting of a right to acquire property at a fixed price for a period in excess of the applicable perpetuities period, and therefore violates the rule. However, because the option agreement creates an option to sell property held by the owner of that property, it is not subject to the rule. The Club cites to no authority that holds that an option to sell property held by the owner is violative of the rule because an option to sell (as opposed to purchase) does not impose any undue restraint on alienation and creates no future estate or interest in the property.[9] Therefore, the option agreement does not violate the rule. Standing
In 1980, the developers assigned all of their rights, title, and interest in the lease, sublease, and option agreement to the co-op (the 1980 agreement). The Club argues that, to the extent the 1980 agreement created a remotely vesting possessory interest in the clubhouse (through the option agreement) in favor of the developers and/or assigns for a period in excess of the applicable perpetuities period, the 1980 agreement violates the rule and is invalid. However, as previously discussed, the option agreement is not subject to the rule, and therefore this argument cannot be sustained.
Furthermore, the Club’s various assertions that the sons have no interest in the Club, have no bearing on its motion for summary judgment and will not be addressed at this time.
*362 Motions to Dismiss
Fourth-party defendant, Chicago Title, moves pursuant to CPLR 3211 (a) (1) and (7) to dismiss the second cause of action in the fourth-party complaint.
Under the same CPLR provisions, the co-op, Putterman and May move to dismiss certain counterclaims asserted against the co-op, and the fourth-party complaint against Putterman and May, brought by the sons.[10]
Dismissal under CPLR 3211 (a) (1) is warranted “only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law” (Leon v Martinez, 84 NY2d 83, 88 [1994]).
When assessing the adequacy of a complaint on a motion to dismiss pursuant to CPLR 3211 (a) (7), a court must afford the pleadings a liberal construction, accept the allegations of the complaint as true, and provide the plaintiff “the benefit of every possible favorable inference” {id. at 87). Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss {id.). The motion must be denied if from the pleadings’ four corners “factual allegations are discerned which taken together manifest any cause of action cognizable at law” (511 W 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002], quoting Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]).
Chicago Title’s Motion
For the reasons set forth below, the motion is granted and the second cause of action in the fourth-party complaint is dismissed. In addition to, and in conjunction with, the reasons expressed on the record during the January 20, 2010 oral argument, coverage under Chicago Title’s policy of insurance (the policy), which insured the developers’ leasehold interest under the lease, ceased upon the developers’ transfer of their interest in the leasehold in the 1980 agreement, because the instrument was devoid of any covenant or warranty of title that would have continued coverage.
Burwell v Jackson (9 NY 535 [1854]), a case cited by the sons purportedly for the proposition that an assignment carries with it an implied warranty of title, applies only to executory *363 agreements. Here, the 1980 agreement was made pursuant to a fully consummated contract for sale between the developers and the co-op, and was not executory. Moreover, the policy expressly requires that an instrument that transfers title contain a covenant or warranty of title (conditions of the policy § 3 [f]).
All other arguments asserted in opposition to Chicago Title’s motion have been considered and found unavailing.
The Co-op’s, Putterman’s and May’s Motion
The fourth counterclaim is for unjust enrichment. The criteria for recovery under a theory of unjust enrichment are: (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services (Joan Hansen & Co. v Everlast World’s Boxing Headquarters Corp., 296 AD2d 103, 108 [1st Dept 2002]). To recover from a particular defendant, a plaintiff must demonstrate that services were performed for the defendant resulting in its unjust enrichment (id.). It is not enough that the defendant received a benefit from the activities of the plaintiff. If services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery (id.).
The sons cannot recover on this claim from the co-op because, even though the co-op may have received an incidental benefit, the rent payments were made at the behest of the Club. Further, the sons have not alleged, nor could they in good faith, that the co-op did not pay the Club its due rent under the various agreements to support a claim for unjust enrichment. Thus, the counterclaim for unjust enrichment must be dismissed.
However, the motion to dismiss the sixth counterclaim for promissory estoppel is denied in part and granted in part. In order to state a viable cause of action for promissory estoppel, the following elements must be established: (1) a promise that is sufficiently clear and unambiguous, (2) reasonable reliance on the promise by a party, and (3) injury caused by the reliance (New York City Health & Hosps. Corp. v St. Barnabas Hosp., 10 AD3d 489 [1st Dept 2004]).
The complaint sets forth allegations that the co-op, by entering into the lease, sublease, 1980 agreement, the 2003 and 2006 *364 agreements,[11] and “numerous communications and promises,” “promised and agreed that it would not interfere with . . . [the sons’] right in and to the Remainder[12] and, further promised and covenanted that it would affirmatively support . . . [the sons’] right to . . . the Remainder” (complaint 1i 216). Further, the complaint alleges that “[b]y reasons of the promises made by the Cooperative . . . , [the sons] justifiably relied upon same to their detriment” (complaint 1Í 223). “By attempting to set aside the Remainder and failing to honor their respective agreements . . . the Co-op ha[s] caused . . . damages in an amount exceeding $15,000,000” (complaint 11 224).
In support of their promissory estoppel counterclaim, the sons may only set forth allegations that are not subsumed in their counterclaim for breach of contract (Celle v Barclays Bank P.L.C., 48 AD3d 301, 302 [1st Dept 2008]). Therefore, to the extent that the sons’ promissory estoppel counterclaim relies on the co-op entering into the lease, sublease, 1980 agreement, and the 2003 and 2006 agreements, the counterclaim is dismissed. However, the allegation of promises independent from the various agreements must be sustained at this time (id. at 303).
The seventh counterclaim is for a declaration that the Club’s right to sell the clubhouse under the option agreement will not be exercised because of the co-op’s position in this action (which is disputed by the co-op) that the option agreement is unenforceable. The counterclaim is dismissed because, as discussed earlier, the option agreement is valid and potentially could be exercised by the Club. Therefore, the sons are not entitled to a declaration to this effect.
The ninth counterclaim seeks a “temporary and permanent injunction” against the co-op from taking any action which creates, extends or otherwise confers rights in and to the air rights parcel, or diminishes the remainder interest in the clubhouse in any way. There is currently no application pending for a preliminary injunction. To the extent the counterclaim seeks a perma *365 nent injunction, it is sustained at this time. Further discovery is necessary to ascertain the extent to which the sons may be entitled to a permanent injunction. Therefore, dismissal of this counterclaim is premature.
The tenth counterclaim asserts that the co-op breached the covenant of good faith and fair dealing by acting to deprive the sons of their right to the remainder interest in the clubhouse. This counterclaim does not pass muster under CPLR 3013, in that the allegation is too conclusory to put the co-op upon proper notice as required thereunder. Therefore, the counterclaim is dismissed pursuant to CPLR 3211 (a) (7).
Lastly, Putterman and May move to dismiss the sons’ fourth-party complaint insofar as it alleges negligence against them. In addition to, and in conjunction with, the reasons expressed on the record during the January 20, 2010 oral argument, the fourth-party complaint is dismissed as against them. The sons fail to allege the existence of a duty owed by Putterman and May to the sons required to sustain such a claim.

. In its third cause of action, the Club seeks a declaration that a certain 50-year lease and a related 40-year option agreement are invalid because they violate New York’s rule against perpetuities (EPTL 9-1.1).

. Although not captioned as such, in the interest of clarity, the court will treat Chicago Title’s motion as a cross motion to plaintiffs motion for summary judgment.
The fourth-party complaint’s second cause of action seeks a declaratory judgment as to whether Chicago Title is required to defend and indemnify the fourth-party plaintiffs under a title policy that Chicago Title assumed by succession, as heirs to the former insureds.

. The developers are now deceased. Third-party defendants and counterclaim plaintiffs James Conforti, III, and Dean Lyras are the developers’ sons and alleged heirs (hereinafter, the sons).

. The sons also raise the issues of judicial estoppel, promissory estoppel, and equitable estoppel to no avail.

. Although the rule generally does not apply to options appurtenant to leases (Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 165 [1986]), Restatement (First) of Property § 395 sets forth an exception (see also Warren St. Assoc., 202 AD2d 200 [1994]).

. Generally, an option to purchase land that originates in a lease provision, is not exercisable after lease expiration, and is incapable of separation from the lease, is valid even though the holder’s interest may vest beyond the perpetuities period. Such options, known as options “appendant” or “appurtenant” to leases, encourage the possessory holder to invest in maintaining and developing the property by guaranteeing the option holder the ultimate benefit of any such investment. Options appurtenant thus further the policy objectives underlying the rule against remote vesting and are not contemplated by EPTL 9-1.1 (b) (Symphony Space v Pergola Props., 88 NY2d 466, 480 [1996]). Options appurtenant to a lease are considered “part of’ the lease (see Buffalo Seminary v McCarthy, 86 AD2d 435, 441 [1982], affd 58 NY2d 867 [1983]).

. Pursuant to CPLR 3212 (b), this court has the discretion to grant summary judgment to a nonmoving party if it appears that such party is entitled to judgment (see also Hirsch v Lindor Realty Corp., 63 NY2d 878, 881 [1984]).

. Administrative Code of City of NY § 28-301.1 et seq. provides a similar obligation.

. There is a wealth of case law dating back to the nineteenth century that disallows options to purchase property from the owner under the rule against perpetuities because, where one has the right to take away another’s property, it creates an interest or estate in the property, and unduly burdens alienation (see e.g. London & S. W. Ry. Co. v Gomm, 20 Ch D 562 [1882] [and its progeny]).

. The co-op, Putterman and May seek to dismiss the sons’ counterclaims of unjust enrichment, promissory estoppel, declaratory relief, prehminary and temporary injunction, breach of the covenant of good faith and fair dealing, and negligence.

. The 2003 agreement was between the co-op and the sons pursuant to which the co-op agreed to allow the sons to occupy the clubhouse if the Club did not exercise the option agreement.
The 2006 agreement (again between the co-op and the sons) set forth that the co-op recognized, inter alia, that the sons were the successors in interest of the developers (their fathers), and that the sons were entitled to the clubhouse if the Club did not exercise its rights under the option agreement.

12. The “Remainder” refers to the remainder interest in the clubhouse that the sons would enjoy throughout the remaining lease period subsequent to the sublease’s expiration.