AMERICAN SAVINGS BANK, Plaintiff

v.

SALESKI DEVELOPMENT, INC., Charles G. Saleski, Jr., Architectural Building Agents, Inc., Marino Industries Corp., People of the State of New York, and "John One" through "John Ten", the last ten names being fictitious and unknown to the Plaintiff, the persons or parties intended being the tenants, if any, having or claiming an interest in or lien upon the premises described in the Complaint, Defendants.

No. 92 Civ. 6718 (CLB).

United States District Court, S.D. New York.

Feb. 3, 1993.

Fred Russcol, Robert G. Cucinell, White Plains, NY, for plaintiff.

Edmund Grainger, McCullough, Goldberger & Staudt, White Plains, NY, Kenneth Gunshor, Mt. Kisco, NY, Sidney Eagle, Eagle & Fein, P.C., New York City, for defendants.

## MEMORANDUM & ORDER

BRIEANT, Chief Judge.

This action was commenced by American Savings Bank on or about December 9, 1991 in New York State Supreme Court, County of Westchester, to foreclose a Mortgage on certain real property known as 23–15 Spring Street located in the Village of Ossining, the County of Westchester and the State of New York. The Mortgage was made by defendant Saleski Development, Inc. to American Savings Bank pursuant to the terms of a Consolidation and Extension Agreement dated June 20, 1990 and to secure a Replacement Mortgage Note in the amount of One Million and One Hundred Thousand Dollars ($1,100,000.00). *See* Doc. No. 8, Ex. A. Charles G. Saleski, Jr., and Architectural Building Agents, Inc. are named as defendants since they guaranteed the Note.

On June 12, 1992, Derrick D. Cephas, as Superintendent of Banks of the State of New York Banking Department, took possession of the business and property of American Savings Bank and appointed the Federal Deposit Insurance Corporation as receiver of the Bank. *See* Doc. No. 1. By petition dated September 10, 1992, the Federal Deposit Insurance Corporation, as receiver of American Savings Bank, removed this action from New York State Supreme Court pursuant to Section 1819(b)(2)(B) of Title 12, and Sections 1441 and 1446 of Title 28 of the United States Code.

At the time of the removal of this action to federal court, the following motions were pending in the state court: (1) a motion for summary judgment of foreclosure dated March 26, 1992; (2) a motion for fees and disbursements by the original temporary Receiver, Guy T. Parisi dated May 18, 1992 [1]; and (3) an Order to Show Cause dated June 5, 1992 directing the tenants, Bauer Optical Export Corp., Westchester County Fuel Oil, Inc., Home Designs, Inc., and Architectural Building Agents, Inc., to attorn to the court appointed Temporary Receiver, Michael Santangelo.

On October 26, 1992 and November 17, 1992, this Court heard oral argument. At the conclusion of the oral argument on November 17, 1992, the Court: (1) granted plaintiff's motion to substitute the Federal Deposit Insurance Corporation, in its capacity as Receiver of the American Savings Bank, for plaintiff in the case caption and to replace the fictitious tenant names with the actual names of the building tenants; (2) directed counsel to settle an order on notice with regard to the Order to Show Cause to attorn to the Receiver [2]; and (3) reserved decision on the motion for summary judgment and the motion of the temporary receiver for fees and disbursement. *See* Nov. Tr. at 28, 29. The undecided motions were marked fully submitted on December 3, 1992, the date of the last submission by counsel and, on January 11, 1993, this Court signed an Order directing the tenants to attorn to the receiver. *See* Doc. No. 28.

The Court will consider plaintiff's motion for summary judgment first. Defendants

1. At the October 26, 1992 conference before this Court, the parties acknowledged that Guy T. Parisi, the temporary receiver, was discharged by the State Court and that this Court must consider only Mr. Parisi's request for fees and disbursements. October 26, 1992 Tr. at 4–5.

2. At the November 17, 1992 conference, the Court directed Edmund C. Grainger, III, counsel for defendant-mortgagor Saleski Development, Inc., to turn over to the Receiver all tenant security deposits within 48 hours or file an affidavit signed by an officer of the corporation explaining why the security deposits have not been turned over. *See* November 17, 1992 Tr. at 12–13, 34. The Court also directed defendants Westchester Fuel and Bauer Optical to attorn to the Receiver for any rent due on or after February 10, 1992 which had not been paid to date, with credit to be given for any fuel or water bills actually paid by a particular tenant but only to the extent that the Receiver would have had to pay the bills to keep the building open, safe and operational. Nov. Tr. at 15–18, 20.

Saleski Development, Inc., Charles G. Saleski, Jr. and Architectural Building Agents, Inc. (hereinafter referred to as "the Saleski defendants") allege in their answer that American Savings Bank modified the Mortgage (Consolidation and Extension Agreement) and by reason of this modification waived any right to hold the defendants in default and or enforce the Mortgage guarantees. *See* Doc. No. 8, Ex. A., Verified Complaint. In particular, the Saleski defendants alleges that in October of 1990, American Savings Bank agreed to an 18 month "payout" under which Saleski Development was obligated to pay American Savings Bank $6,000 for the first eight months, $7,700 for the months nine through twelve, and $8,775 for months thirteen through eighteen, with any accrued unpaid interest to be rolled over and amortized into the Original Note. *See* Doc. No. 8, Saleski Aff., ¶¶ 4, 5.

Plaintiff denies that such an agreement was made and has submitted the affidavit of Tony Shelton, a Supervisory Liquidations Specialist of the Federal Deposit Insurance Corporation. In his affidavit, Mr. Shelton explained that "a search has been performed of the books and records of AMERICAN SAVINGS BANK.... [N]o written documents signed by AMERICAN SAVINGS BANK or SALESKI DEVELOPMENT, INC. were found which concerned a purported agreement to modify the payment provisions of the replacement mortgage note executed by SALESKI DEVELOPMENT, INC. on June 20, 1990 and delivered to AMERICAN SAVINGS BANK and/or the consolidation agreement by AMERICAN SAVINGS BANK and SALESKI DEVELOPMENT, INC. on June 20, 1990." *See* Doc. No. 24, ¶¶ 2–3. However, annexed to the Shelton Affidavit are three documents which were found in the books and record turned over to the F.D.I.C. by American Savings Bank that concern the alleged payout agreement.

An internal memorandum written by a bank employee, Lynn H. Sauro, to the Loan Committee dated October 11, 1990, acknowledges that American Savings Bank at least considered modifying Mr. Saleski's monthly payments for a period of six months. The memorandum states in relevant part:

> I am suggesting Saleski's monthly payment should be decreased to $6,000 monthly for the next six months, at which time the note will return to its original terms. The accrued unpaid interest which will total approximately $27,000 will be converted to a twelve month term note at 2% over prime floating. The present loan rate is 1½ over prime but should be increased to 2% over prime during the six month deferment period to partially offset the increased risk.

*See* Doc. No. 24, Ex. A.

Excerpts from unsigned Loan Committee Minutes dated October 12, 1990 and October 25, 1990 state that the Loan Committee unanimously approved Ms. Sauro's proposed modification on the condition that Mr. Charles G. Saleski, Jr. obtain a second mortgage on his personal residence. There is no indication that Mr. Saleski ever satisfied this condition, but both American Savings Bank and Saleski Development, Inc. agree that Saleski Development Inc. made and the bank accepted the reduced payments during the 6 month period between November, 1990 and April, 1991. *See* Doc. No. 8, Edwards Aff., ¶ 22–24; Doc. No. 8, Saleski Aff., 2–3; Doc. No. 8, Shelton Aff., ¶ 6; Doc. No. 24, July 8, 1991 Note to File ("Saleski's mortgage had been restructured for six month period which ended in April.").

■ Nonetheless, plaintiff maintains that Section 1823(e) of Title 12, 12 U.S.C. § 1823(e), and the rationale of *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), preclude the Saleski defendants from asserting that the terms of the Mortgage and Note were modified by oral agreement between American Savings Bank and the Saleski defendants. Under Section 1823(e), a debtor may not attempt to avoid an obligation to the FDIC by claiming that the insolvent financial institution had entered into an oral modification agreement prior to the acquisition of

the asset by the FDIC unless the agreement is memorialized by a writing. 12 U.S.C. § 1823(e).

As Justice Scalia explained in *Langley v. Federal Deposit Insurance Corporation,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), Section "1823(e) is meant to ensure more than just the FDIC's ability to rely on bank records at the time of an examination or acquisition. The statutory requirements that an agreement be approved by the bank's board or loan committee and filed contemporaneously in the bank's records assure prudent consideration of the loan before it is made, and protect against collusive reconstruction of loan terms by bank officials and borrowers (whose interests may well coincide when a bank is about to fail)." *Id.* at 95, 108 S.Ct. at 403.

■ In the instant case, the Saleski defendants are not relying on an alleged oral modification agreement but instead maintain that the payout agreement was in writing and approved by the Loan Committee, as is reflected in the records of American Savings Bank. There can be no doubt that the October 11, 1991 Memorandum of Ms. Sauro and the October Loan Committee minutes found in the books and records of American Savings Bank are written documents which have been continuously maintained, from the time of their execution, as official records of American Savings Bank. There is no suggestion whatever that the terms of the payout were collusively reconstructed by either bank officers or the borrower.

The factual issue in this case, and one that can not be answered at this stage of the litigation, is whether the proposed agreement contained in those documents was ever approved by the Loan Committee and/or formally entered in the minutes of the Loan Committee. The only relevant affidavit on this issue, is that of Mr. Shelton which states "[i]t is not presently known if the loan committee minutes ... were ever signed and formally entered into the minutes of the loan committee. A continuing search is being undertaken to establish this." *See* Doc. No. 8.

Based on the current state of the record and viewing the facts in the light most favorable to the non-moving party, as the Court must, plaintiff's motion for summary judgment must be denied. There is a disputed issue of fact as to whether the proposed agreement was ever formally approved by the Loan Committee. There is also a separate contested issue of fact as to whether any Mortgage payments were debited to the checking account maintained by defendant Saleski Development, Inc. with American Savings Bank after August 22, 1991, the date of the last Mortgage payment alleged to have been made by Saleski Development, Inc. to American Savings Bank. While the Court has some doubt as to whether the Saleski defendants will ultimately succeed at trial, the Court grants defendants a limited period of sixty (60) days to conduct additional pre-trial discovery confined to these two issues.

Next, the Court must consider the motion of Guy T. Parisi, Esq. the original Temporary Receiver, for compensation for services rendered between February 3, 1992, the date of his appointment as Temporary Receiver, and April 1, 1992, the date of his resignation as Temporary Receiver. Mr. Parisi requests compensation in the amount of $500.00.

During the two months that Mr. Parisi served as Temporary Receiver, he qualified as a Temporary Receiver by posting a Penal Bond, visited the premises, prepared a list of tenants and a lease summary for each tenant, prepared and served a Notice to Attorn, established an Account with the Bank of New York and negotiated a Management Agent Agreement. *See* Doc. No. 23, Parisi Aff. In March of 1992, an apparent conflict of interest developed between the attorney and the Managing Agent selected by Mr. Parisi to act on his behalf and, as a result, Mr. Parisi and the attorney for plaintiff, Mr. Cucinell, determined that it would be in the best interest of all parties if Mr. Parisi resigned.

■ Plaintiff objects to Mr. Parisi's fee request on the ground that Mr. Parisi's commission may not exceed $100.00 under

Section 8004 of New York's Civil Practice Law and Rules. Section 8004 provides:

**(a) Generally.** A receiver, except where otherwise prescribed by statute, is entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him, as the court by which he is appointed allows, but if in any case the commissions, so computed, do not amount to one hundred dollars, the court, may allow the receiver such a sum, not exceeding one hundred dollars, as shall be commensurate with the services rendered.

**(b) Allowance where funds depleted.** If, at the termination of a receivership, there are no funds in the hands of the receiver, the court, upon application of the receiver, may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered....

N.Y.Civ.Prac.L. & R. § 8004 (McKinney 1981 & Supp.1992).

During the course of his receivership, Mr. Parisi received and disbursed $1490.00. Five percent of $1490.00 equals $74.50. The Court finds that the award of $74.50, or even the statutory maximum of $100.00 under Section 8004(a), would be manifestly unfair. Thus, this Court, in the exercise of its inherent powers under Section 8004(a) and (b) awards Mr. Parisi the sum of $500.00, as a *quantum meruit* award for the reasonable value of the services rendered. *See Klemczyk v. Levin,* 144 Misc.2d 124, 543 N.Y.S.2d 609 (Erie Co.Ct. 1989) (awarding receiver in excess of statutory amount as a *quantum meruit* award for services rendered); *but see Hirsch v. Peekskill Ranch, Inc. et al.,* 100 A.D.2d 863, 474 N.Y.S.2d 117 (2d Dep't 1984) (statutory commission is the maximum amount payable to a receiver).

■ With respect to the Five Hundred Dollars ($500) requested as payment for the legal services provided by Anthony S. Colavita, Esq. as the attorney for the Temporary Receiver, the Court denies the request, solely for want of authority on the part of the Temporary Receiver to employ Mr. Colavita. Section 6401(b) of New York's Civil Practice Law and Rules is quite plain. "A receiver shall have no power to employ counsel unless expressly authorized by order of the court." § 6401(b). While the affidavit submitted by Mr. Colavita states that he and the receiver, who is also an attorney, prepared a Motion to Amend the Order Appointing the Temporary Receiver to permit the employment of counsel, there is no indication that such a Motion was filed or that any court order issued thereon. In the absence of unusual or exigent circumstances, there is no basis upon which this Court can ratify the unauthorized engagement of counsel, after the fact, even if it would be inclined to do so. *Emigrant Savings Bank v. Elan Management Corp., et al.,* 114 Misc.2d 472, 453 N.Y.S.2d 977 (N.Y.Sup.Ct.1982).

Finally, by notice dated January 27, 1993, defendant Bauer Optical Export Corp. has moved to reargue plaintiff's motion to attorn to the receiver which was orally granted by this Court on November 17, 1992. *See* Fed.R.Civ.Proc. Rule 60(b); November 17, 1992 Tr. at 15–18, 20; Doc. No. 28, at 3. Upon reviewing the submission of Bauer Optical and reconsidering the prior proceedings herein, this Court declines to grant defendant's motion to reargue the motion to attorn to the receiver. As a matter of law, defendant Bauer Optical is obligated to pay over to Michael Santangelo, the Temporary Receiver, all rent on the space it occupies in the Mortgaged premises at the rental rate fixed in its Lease, without any offset whatsoever.

All counsel appearing in this action are directed to complete discovery within sixty (60) days of the issuance of this Memorandum & Order and bring this litigation to a state of trial readiness. Counsel are further directed to appear at Courtroom 31, United States Courthouse, 101 East Post Road, White Plains, New York on April 20, 1993 at 9:00 AM, for the purpose of a status report conference and to set a trial date.

SO ORDERED.