JY Citizen L.P. v 333 E. 150 St. Realty LLC (2025 NY Slip Op 25069)

[*1]

JY Citizen L.P. v 333 E. 150 St. Realty LLC

2025 NY Slip Op 25069

Decided on March 21, 2025

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 21, 2025
Supreme Court, Bronx County

JY Citizen L.P., Plaintiff,

against
333 E. 150 Street Realty LLC; CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD; EARL L. BAILEY, JR.; LOUIS G. HAASE; ALBERT J. HAASE; THE CITY OF NEW YORK ACTING BY AND THROUGH ITS DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT AND JOHN DOE #1 THROUGH JOHN DOE #99, Defendant(s).

Index No. 36043/20E

Counsel for Plaintiff: Jacobowitz Newman Tversky LLP
Receiver: Ricardo E. Oquendo

Fidel E. Gomez, J.

In this action for foreclosure on a mortgage and the sale of the real property pledged as security, plaintiff moves seeking an order, inter alia, discharging the receiver. Plaintiff avers that the mortgaged property was sold at foreclosure, plaintiff purchased the same and that, as such, the services of the receiver are no longer necessary. The instant application is unopposed.
For the reasons that follow hereinafter, plaintiff's motion is granted, in part.
The instant action is for foreclosure on a mortgage and the sale of the real property pledged as security. The complaint alleges that on July 30, 2015, defendant 333 E. 150 STREET REALTY LLC (Realty) executed a note, whereby it agreed to repay nonparty RCFNJ, LLC (RCFNJ) a loan in the amount of $2,500,000. In order to secure the note, on the foregoing date, Realty executed a mortgage wherein it pledged real property located at 333 East 150th Street, Bronx, NY (333) as security. On January 13, 2017, RCFNJ assigned the foregoing note and mortgage to nonparty Ponce Bank (Ponce). On the same day, Realty executed a gap note, wherein it agreed to repay a loan to Ponce totaling $370,000. Realty also executed a consolidated note, wherein it combined the first two notes into a single note evincing one single indebtedness totaling $2,870,000. Realty then executed an agreement, wherein the first mortgage was consolidated with a mortgage securing the gap note, which pledged 333 as security for the gap note. Said agreement evinced a single mortgage securing the consolidated note by pledging 333 as security. On January 13, 2017, as further inducement for the foregoing loans, defendant EARL L. BAILEY, JR. (Bailey) executed a guaranty, wherein he agreed to guarantee Realty's [*2]obligations under the consolidated note. Pursuant to the mortgage, 333 was required to make monthly payments to repay the loan. Furthermore, per the mortgage, the failure to make a payment when due was a default thereunder, which authorized the initiation of an action to foreclose on the mortgage. In May 2019, 333 defaulted by failing to make a payment then due. Neither 333 nor Bailey have repaid the sums due under the loan. On January 10, 2020, Ponce assigned the consolidated note and mortgage to plaintiff, who owns and holds them. Based on the foregoing, plaintiff seeks a judgment allowing it to foreclose on the mortgage and sell 333. Plaintiff also seeks a deficiency judgment against Bailey premised on the breach of the guaranty.
On February 10, 2022, the Court (Gonzalez, J.) issued an order granting plaintiff's application for the appointment of a temporary receiver and appointed Ricardo Oquendo (Oquendo) as the temporary receiver in this action. Notably, the Court ordered that Oquendo was authorized "to forthwith take charge and enter into possession of the property."
On February 25, 2022, Oquendo filed his Oath and Designation as required by the Court's order as well as the bond required thereby.
On January 20, 2023 this Court granted plaintiff's application seeking the entry of a default judgment and an order of reference.
On November 11, 2023, this Court granted plaintiff's application seeking a Judgment of Foreclosure and Sale and, on November 14, 2023, issued a separate order granting the foregoing relief.
On January 3, 2024, plaintiff and Oquendo, by stipulation, agreed to extend the receivership until April 1, 2024 or until 333 was sold at foreclosure, which ever occurred first.
On July 10, 2024, plaintiff filed the referee's Report of Sale, wherein the referee states that 333 was sold at auction to plaintiff on April 1, 2014 for $100. Per the referee's report, with respect to the loans to 333, plaintiff was owed $6,720,688.14.
Plaintiff's motion seeking to discharge Oquendo and fix his commissions is granted. Significantly, here, after a review of, inter alia, Oquendo's final account, his invoice for services rendered and his affirmation, the Court determines that he is entitled to quantum meruit commissions calculated pursuant to CPLR § 8004(b).
 Standard of Review
Pursuant to CPLR § 6404, "[a] temporary receiver shall keep written accounts itemizing receipts and expenditures, and describing the property and naming the depository of receivership funds." Moreover, pursuant to CPLR § 8004(a) "[a] receiver, except where otherwise prescribed by statute, is entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him, as the court by which he is appointed allows."
Accordingly, on an application seeking to discharge a receiver and approve his/her accounts, it follows that the court who appointed him/her must examine the receiver's accounts in order to ascertain the funds that he/she received and/or disbursed. Only upon such a review, will a court can approve or reject a receiver's accounts and determine whether he/she should be discharged.

Applicable Law
A receiver is charged with "preserv[ing] and operat[ing] the property, within the confines of the order of appointment and any subsequent authorization granted to him by the court" (Jacynicz v 73 Seaman Assoc., 270 AD2d 83, 85 [1st Dept 2000] [internal quotation marks [*3]omitted].), and his/her powers are limited to those enumerated in the appointing order (Daro Indus., Inc. v RAS Enterprises, Inc., 44 NY2d 969, 970 [1978]).
Moreover, "[i]t [] is fundamental law that a receiver is required to render services in order to earn his commissions and it is the receiver's burden to justify his account" (Key Bank of New York v Anton, 241 AD2d 482, 483 [2d Dept 1997]; see De Nunez v Bartels, 264 AD2d 565, 566 [1st Dept 1999]; Ind. Properties Co., Inc. v Mast Prop. Inv'rs, Inc., 148 AD2d 849, 850 [3d Dept 1989])
Pursuant to CPLR § 8004(a)
[a] receiver, except where otherwise prescribed by statute, is entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him, as the court by which he is appointed allows, but if in any case the commissions, so computed, do not amount to one hundred dollars, the court, may allow the receiver such a sum, not exceeding one hundred dollars, as shall be commensurate with the services he rendered.
Accordingly, generally, "[a] receiver is entitled to commissions not exceeding five percent of sums received and disbursed by him or her" (Silvestre v Shelley, 30 AD3d 401, 402 [2d Dept 2006] [internal quotation marks omitted]; see Friesch-Groningsche Hypotheekbank Realty Credit Corp. v Semerjian, 232 AD2d 448, 449 [2d Dept 1996]) and generally, the foregoing is the maximum amount payable to a receiver (Friesch-Groningsche Hypotheekbank Realty Credit Corp. at 449).
The language in the statute, so as to avoid a double recovery, has been interpreted to mean that a receiver is not entitled to five percent of all funds received plus five percent of all funds disbursed, rather, the commissions are calculated on the total sums received by him/her (WF Shirley, LLC v William Floyd Plaza Assoc., 270 AD2d 255, 256 [2d Dept 2000] ["We agree with the plaintiff that the commission of the temporary receiver should be calculated as 5% of the gross receipts."]; People v Abbott Manor Nursing Home, 112 AD2d 40, 41 [4th Dept 1985] ["We find, however, that Supreme Court erred in allowing commissions under CPLR 8004 in an amount equal to the aggregate of five per cent of the sums received and five per cent of the sums disbursed. We reduce the amount to five per cent of the total receipts or $74,910.40."]). While generally, the sums received and disbursed should be the same and commissions calculated upon that sum (Eastrich Multiple Inv. Fund, L.P. v Citiwide Dev. Assoc., 218 AD2d 43, 44 [1st Dept 1996]), when the sums received and disbursed are not the same, the commission should be calculated as a percentage of what the court decides "is the value of the assets which came into the hands of the receiver[], and which were disbursed or transferred by them" (id. at 44 [internal quotation marks omitted]).
In addition to commissions, a receiver is entitled to reimbursement of necessary expenses (Radio Eng'g Indus., Inc. v York, 14 AD3d 893, 893 [3d Dept 2005] ["A receiver is statutorily entitled to reimbursement of necessary expenses and commissions of up to 5% of the amount disbursed to the judgment creditor."]; Matter of Katz, 220 AD2d 590, 591 [2d Dept 1995]).
With respect to the source of a receiver's commissions, it is well settled that the commissions are to be paid from the sums collected by him/her from the property to which he/she has been appointed (Pondview Corp. v Russand, Inc., 132 AD3d 964, 965 [2d Dept 2015]; Sun Beam Enterprises, Inc. v Liza Realty Corp., 210 AD2d 153, 154 [1st Dept 1994]; Long Is. [*4]City Sav. and Loan Ass'n v Bertsman Bldg. Corp., 123 AD2d 840, 840 [2d Dept 1986]).
However, CPLR § 8004(b) states that
[i]f, at the termination of a receivership, there are no funds in the hands of the receiver, the court, upon application of the receiver, may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered, and may direct the party who moved for the appointment of the receiver to pay such sums, in addition to the necessary expenditures incurred by the receiver. This subdivision shall not apply to a receiver or his attorney appointed pursuant to article twenty-three-a of the general business law.
Accordingly, while generally, a receiver's compensation is limited to the funds derived from the property to which he/she is appointed to maintain, such that the party who sought the receiver is not ordinarily liable for the receiver's commissions, upon the existence of special circumstances, the party who sought the receiver may be required to pay some or all of the receiver's commissions (Pondview Corp. at 965 ["The Supreme Court properly applied CPLR 8004(b) and directed the appellants to pay the operating deficit. Where, as here, special circumstances are demonstrated, the court may direct the party who moved for the appointment of a receiver to pay necessary expenses and compensation which exceeds the money in the receiver's hands at the termination of the receivership" [internal citations omitted].; Sun Beam Enterprises, Inc. at 154 ["Nor did the IAS court err in finding that "special circumstances" existed warranting the recovery by the temporary receiver of the full amount of the deficit in the receiver's account from the plaintiff's assignor, East New York, for whose benefit the temporary receiver was appointed, since the proof submitted by the receiver established that the receivership was conducted with the utmost concern for the physical and economic preservation of the property and that the money expended was 'judiciously spent' and was necessary for its preservation."]; Long Is. City Sav. and Loan Ass'n at 840 ["Upon application of a receiver, the court may direct the party who moved for the appointment of the receiver to pay necessary expenses and compensation which exceeds the money in the receiver's hand at the termination of the receivership (CPLR 8004[b]). 

Like commissions, expenses incurred by the receiver are generally paid from the funds derived from the property entrusted to the receiver. However, when special circumstances exist, a plaintiff for whose benefit the receiver was appointed is also liable for a receiver's necessary expenses (Pondview Corp. at 965; Long Is. City Sav. and Loan Ass'n v Bertsman Bldg. Corp. at 840; Litho Fund Equities, Inc. v Alley Spring Apartments Corp., 94 AD2d 13, 15 [2d Dept 1983] ["The real question is whether there were special circumstances that make it equitable to impose additional receivership expenses on Litho even though the expenses exceed the rent collected . . . It would have been preferable, of course, for Kalikow to apply for compensation in advance of providing special services, but the failure to obtain such prior judicial sanction does not preclude the court from exercising its discretionary authority based upon special circumstances. Among the additional factors that bear on the existence of special circumstances are the degree of necessity of the expenses and the benefit received by the party who moved for the receivership. The court's discretion in ordering the payment of such additional expenses accords with the equities of the situation" [internal citations omitted].)
Special circumstances exist when it is demonstrated that the receiver spent sums towards the maintenance of the premises, that said sums were judiciously spent, and that such [*5]expenditures were necessary and beneficial to the plaintiff for whose benefit the receiver was appointed Pondview Corp. at 965; Sun Beam Enterprises, Inc. at 153; Long Is. City Sav. and Loan Ass'n at 840). Stated differently, special circumstances exist when a receiver depletes the receivership account because the maintenance of the relevant property requires it.
With respect to calculating a receiver's commission, CPLR § 8004(b) allows a deviation from the computation methodology prescribed by CPLR § 8004(a) and states that a court "may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered." Thus, it is clear that the foregoing language allows a receiver's commission to be calculated using a quantum meruit calculation. Quantum meruit compensation means the reasonable value of the services rendered (Crown Const. Builders v Chavez, 130 AD3d 969, 971 [2d Dept 2015] ["A plaintiff seeking to recover on a cause of action sounding in quantum meruit must demonstrate (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services allegedly rendered" [internal quotation marks omitted].; Fulbright & Jaworski, LLP v Carucci, 63 AD3d 487, 488-89 [1st Dept 2009] ["To state such a cause of action, plaintiff must allege (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."]).
While there is no appellate authority on this issue, it is clear that the express language of CPLR § 8004(b) allows a receiver's commissions to be calculated based on a quantum meruit calculation (CPLR § 8004[b] [a court "may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered."]). Moreover, the Court agrees with the few state and federal courts that have addressed this issue and likewise holds that if using the calculation methodology prescribed by CPLR § 8004(a) to calculate a receiver's commissions is manifestly unfair - meaning, it is inadequate - the court can calculate his/her commissions based on quantum meruit (AJ Partners, LLC v L & V Post Realty, LLC, 61 Misc 3d 521, 525 [Sup Ct 2018] ["The court finds that it should exercise its inherent equitable authority to award Fontana a commission based on quantum meruit in excess of that calculated by plaintiff which, albeit mathematically accurate, is manifestly unfair. The court finds that in the case now before it, as in others where receivers have been appointed to assume responsibility for the upkeep and maintenance of marginal inner-city properties, it is unfair to expect the court appointee to put in the required time and effort, with the expectation of only bare minimal compensation in return. As this court has experienced, it is not an easy task to find individuals willing to serve in this capacity under these circumstances" [internal citations and quotation marks omitted].; Fed. Home Loan Mortg. Corp. v S.E.A. Yonkers Assoc., 869 F Supp 187, 188 [SDNY 1994] ["The receiver points out that although § 8004(a) sets a maximum commission for receivers, additional amounts may be awarded representing the reasonable value of services rendered under the doctrine of quantum meruit if the statutory amount would be manifestly unfair"] [internal quotation marks omitted].; Am. Sav. Bank v Saleski Dev., Inc., 812 F Supp 28, 32 [SDNY 1993]; Klemczyk v Levin, 144 Misc 2d 124, 125 [NY Co Ct 1989]). 
In AJ Partners, LLC, the court granted the receiver's application to fix his commissions on a quantum meruit calculation (id. at 526). In that case, the receiver was tasked with the preservation of an old property in an older neighborhood, "which needed constant care and repair [*6]to remain code compliant so as to protect the safety and well-being of the tenants" (id. at 522). Further, the building in that case had a limited rent roll, resulting in the failure to obtain the rent receipts needed to meet the building's overhead (id. at 522). The court noted that the receiver spent considerable time collecting rents and paying those expenses which were required to protect the interest of the tenants in the building, and "that in addition to receiving, with some difficulty, the rents from the tenants and paying the necessary expenses, he spent a considerable amount of time in the active management of the property, which is often the case where the building is old and the rent roll is modest" (id. 522-523). Noting that it was unlikely that the receiver could have retained a property manager, that the receiver was thus, forced to act as a rent collector and property manager, and that using CPLR § 8004(a) the receiver's commissions would have only totaled $893.47, the court granted the receiver's application, awarding quantum meruit compensation totaling $5,000 with an additional $100 for expenses (id. at 524-526).
Notably,
[t]he law contemplates that a receiver should earn his commissions by a real and substantial service to the estate. When these services are performed for him by others selected by him without permission of the court appointing him he cannot look to the estate for reimbursement unless the exigency of the case is such as to justify a court in the exercise of a wise discretion in allowing those expenditures
(Niagara Life Ins. Co. v Lincoln Mtge. Co., 175 AD 415, 416 [1st Dept 1916]). Accordingly, "[i]t is the rule that a Receiver who is a lawyer is expected to perform customary legal duties connected with his tenure" (Strober v Warren Prop. Co., 84 AD2d 834, 836 [2d Dept 1981]). Accordingly, when the receiver is an attorney and fails to have the Court appoint counsel for him/her, "[t]t is expected under such circumstances that the receiver will perform all of the ordinary legal services connected with his duties in consideration of the commission that he will receive; and that the employment of counsel is unnecessary" (Capone v Matteo Realty Corp., 237 AD 322, 323 [2d Dept 1932]; Husqvarna Vapenfabriks Aktiebolag v R.P. Hussey & Co., 211 AD 88, 89-90 [1st Dept 1924] ["In the case at bar there was no permission to employ an attorney for this specific service. There was no service shown which could not have been performed by the receiver and for which he would not be compensated by the commissions which he should thereafter collect."]). For this reason, when a receiver seeks to have the court appoint counsel, nunc pro tunc, after the same has been retained and performed services, such relief shall be denied if the services performed by counsel should and could have been performed by the receiver (Bozewicz v Nash Metal Ware Co., Inc., 280 AD2d 443, 444 [2d Dept 2001] ["Further, although the court may authorize the retention of counsel by a temporary receiver, nunc pro tunc, and the payment of an attorney's fee, the appellants raised factual issues as to the necessity and reasonableness of the fee, including, inter alia, whether counsel performed duties that are customarily performed, and should have been performed, by the temporary receiver."]).
As the court in Niagara Life Ins. Co. noted, the foregoing is true with respect to any services that a receiver delegates to others absent court approval and for which she/he then seeks reimbursement (id. at 416 ). Thus, in denying reimbursement to the receiver for fees he paid to counsel and a real estate agent, the court reiterated that the receiver was responsible for the tasks delegated (id. 416) and noted that "[i]n [that] particular matter it would seem that the receiver [*7]laid the performance of most of his duties upon a counsel and a real estate agent" (id. at 416). Thus, the court denied a request to reimburse the receiver for the foregoing services (id. at 416). 

 Discussion
plaintiff's application seeking to fix Oquendo's commissions, reimburse his expenses, discharge him, and for distribution to plaintiff of any funds remaining in the receivership account after deducting the sums due to Oquebdo, is granted, in part. Significantly, Oquendo has provided his accounting and will be discharged. However, to the extent that plaintiff seeks any funds remaining in receiver's account, such relief is denied since the Court will calculate his commissions pursuant to CPLR §8004(b) on a quantum meruit basis.
In support of the instant application, plaintiff submits documents from City of New York Department of Housing Preservation and Development (HPD), which evince that between 2004 and 2024, it issued hundreds of violations to 333. The violations have been issued for issues such as bedbug infestations, broken floors, defective bricks, leaks and broken carbon monoxide detectors. Included in the foregoing documents is a list of work orders for repairs preformed at 333 by HPD. The sums incurred by HPD related to 74 work orders totals $98,000. 
The HPD documents further indicate that, on September 19, 2024, HPD ordered that the owner of 333 perform work therein to correct issues. The work required was pointing, replacement of the roof, replacement of the waste lines, and integrated pest management. The foregoing order indicated that if the work was not performed, HPD would perform the work at the owner's expense and that the owner would be liable for fees and penalties. 
Plaintiff submits documents from the New York State Division of Housing and Community Renewal (DHCR). The documents contain a notice dated October 18, 2024, which states that DHCR had initiated compliance proceedings against plaintiff for its failure to comply with a DHCR's order dated January 24, 2024. Attached to the notice is an order, which states that plaintiff violated Section 2527.6(c) of the Rent Stabilization code by failing to repair a myriad of building wide issues, including broken steps, broken tiles, defective fire escapes, security issues, and inadequate lighting. Additionally, per the order there were a litany of issues afflicting six apartments. Per the notice, the failure to ameliorate the foregoing conditions would result in penalties totaling $1000-$3000. 
Plaintiff submits a contract and a series of emails. The contract is between Oquendo and DMT Plumbing and Heating (DMT) and evinces that DMT was retained to, inter alia, install a new boiler at 333. The contract indicates that the cost of the permits for the installation was $115,000 and that 50% of that sum was due upon the signing of the contract. The emails evince that because there were insufficient funds in Oquendo's receiver account, plaintiff agreed to pay for the installation of the new boiler. 
Lastly, plaintiff submits a water bill from New York City Department of Environmental Protection (DEP). The bill evinces that as of October 14, 2024, 333 owes DEP $436,576.72 for water.
In support of his commissions, Oquendo submits a statement of sums received and disbursed during his tenure at 333. The total sums received were $1,267,696.80. The total sums disbursed were $1,180,922.91. 
Oquendo submits an account/invoice, wherein he seeks commissions totaling $177,891.04. The invoice details services provided by Oquendo and Maria C. Deraco (Deraco) [*8]in connection with Oquendo's receivership at 333 between February 10, 2022 and October 31, 2024. With respect to the services provided, the same includes a myriad of tasks such as review of rent ledgers, visits to 333, discussions with tenants and the superintendent at 333, telephone and email exchanges with plaintiff, and discussions with DMT, HPD and DHCR. With respect to the services provided by Oquendo, he seeks payment for the same in the sum of $103,350, representing 159 hours of work at a rate of $650 per hour. Oquendo also seeks payment for services provided by Deraco in the sum of $72,562.50, representing 193.50 hours of work at a rate of $375 per hour. Per the invoice, Oquendo seeks reimbursement for costs incurred by him, mostly for postage, in the amount of $1,978.54. 
Oquendo submits a bank statement from JP Morgan Chase Bank, N.A., which evinces that as of November 29,2024, the receivership account contained $88,567.65. 
Oquendo submits a series of emails, which evince that on February 24, 2022, he contacted Lemle & Woff, Inc. (LW), a property management company, to see if they would agree to manage 333. Per an email dated February 25, 2022, LW declined to manage 333. Per an email dated March 10, 2022, Oquendo emailed Foxy Management, another management company to see if they would agree to manage 333. 
Oquendo submits another series of emails, which evince that on April 12, 2023, he was contacted by the Telemenundo Network (TN) and was apprised that TN was working on a story about the absence of gas at 333 for over a decade. In emails dated that same day, Oquendo apprised TN that the gas at 333 had been turned off because there were leaks in the pipes within 333, that there were efforts underway to replace the broken pipes, that upon assuming control of 333 incident to this action seeking foreclosure, Oquendo discovered that the building was in a state of severe neglect and disrepair, and that Oquendo was doing all that he could legally do to improve the living conditions at 333.
Oquendo submits DHCR's order and a series of emails, which evince that he contacted DHCR and explained that he was the receiver with limited powers and that the reason for the conditions in the order issued by DHCR was the result of, inter alia, tenants not paying rent, such that necessary repairs to 333 could not be made. 
Oquendo submits a Petition for Administrative Review (PAR), which he filed in an effort to appeal a rent reduction order issued by DHCR on December 4, 2023. Significantly, Oquendo apprises DHCR that the conditions undergirding the order were the result of the failure by tenants to pay their rent.
Oquendo submits a series of emails, which evince that he contacted HPD's Commissioner to apprise him of the circumstances giving rise to 333's state of disrepair. 
Lastly, Oquendo submits a list of repairs, which were performed at 333 during his time as the receiver. The list includes a large number of building wide repairs, such as the installation of a new boiler and the restoration of gas services to 333. The list also evinces substantial repairs to 33 apartments.
As noted above, generally, "[a] receiver is entitled to commissions not exceeding five percent of sums received and disbursed by him or her" (Silvestre at 402 [internal quotation marks omitted]; see Friesch-Groningsche Hypotheekbank Realty Credit Corp. at 449 [2d Dept 1996]) and generally, the foregoing is the maximum amount payable to a receiver (Friesch-Groningsche Hypotheekbank Realty Credit Corp. at 449). Moreover, in addition to commissions, a receiver is [*9]entitled to reimbursement of necessary expenses (Radio Eng'g Indus., Inc. at 893; Matter of Katz at 591). 
However, CPLR § 8004(b) allows a deviation from the computation methodology prescribed by CPLR § 8004(a) and states that a court "may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered." Thus, it is clear that the foregoing language allows a receiver's commission to be calculated using a quantum meruit calculation. Quantum meruit compensation means the reasonable value of the services rendered (Crown Const. Builders at 971; Fulbright & Jaworski, LLP at 488-489).
While there is no appellate authority on this issue, it is clear that the express language of CPLR § 8004(b) allows a receiver's commissions to be calculated based on quantum meruit. Moreover, the Court agrees with the few state and federal courts to address this and likewise holds that if using the calculation methodology prescribed by CPLR § 8004(a) a receiver's commissions is manifestly unfair - meaning too low - the court can calculate his/her commissions based on quantum meruit (AJ Partners, LLC at 525; Fed. Home Loan Mortg. Corp. at 188; Am. Sav. Bank at 32; Klemczyk at 125]).
Here, to the extent that a receiver's commissions are calculated on the total sums received by him/her, up to a maximum of 5 percent thereof (WF Shirley, LLC at 256; Abbott Manor Nursing Home at 41), per Oquendo's account, during the receivership he received $1,180,922.91. Hence, pursuant to CPLR § 8004(a), his commissions, at the maximum rate of 5 percent, would be $59,046.14. Contrary to plaintiff's assertion, the sums collected by Oquendo necessarily include all sums advanced to him by plaintiff since like rents collected by the receiver, it was by virtue of his efforts that he was able to procure and actually collect the same (cf. Silvestre 402-403 ["The Supreme Court awarded the temporary receiver the higher sum of $61,686.05 based upon a five percent share of an additional $127,141.47 of back rent that was paid to the defendants in the form of an adjustment to the parties' final distribution. This was an error, as the $127,141.47 was never separately collected by the temporary receiver but was instead an amount included within the $1,106,579.65 collected by the temporary receiver, on which the maximum five percent commission must be calculated" [emphasis added]).
Contrary to plaintiff's assertions to the contrary, given the extraordinary services performed by Oquendo, the longstanding conditions existing at 333 prior of Oquendo's appointment, the low rent roll at 333, the amount of time expended by Oquendo to manage 333 because he could not retain a property manager, and, in light of the foregoing, the relatively low commissions which would be awarded to Oquendo if calculated using CPLR § 8004(a), the Court finds that his commissions, if calculated pursuant to CPLR § 8004(a), would be too low and thus, manifestly unfair. As such, here, Oquendo's commissions will be calculated on a quantum meruit basis pursuant to CPLR § 8004(b).
Indeed, by themselves, the exhibits appended to Oquendo's submissions to the Court evince a building with a significant number of deleterious preexisting conditions such that it was in an advanced state of disrepair and dilapidation. Indeed, Oquendo details as much in his affirmation. Specifically, he states that when he assumed control of 333, he discovered that Bailey had neglected 333 for more than a decade, such that 333 was in an extreme state of disrepair. Oquedo further states that when he assumed control of 333, it had amassed over 400 violations and the rent roll, which was never fully realized, would have never been more than [*10]$31,000 - a sum well below what would have been required to rehabilitate 333. Specifically, upon assuming control of 333, Oquendo states that he discovered that
(i) the tenants did not have cooking gas in their apartments for more than 10 years; (ii) a failing boiler; (iii) no mail boxes for more than 5 years; (iv) no steel garbage bins; (v) broken main water lines; (vi) no windows or doors leading into the basement allowing drug addicts to freely enter the basement; (vii) building wide rat and mice infestation; and (viii) basement overrun with years and years of accumulated garbage and debris [and that in] addition, all the apartments had major necessary repairs that needed to be addressed
(NY St Cts Elec Filing [NYSCEF] Doc # 106 at 3-4). Given 333's state of disrepair and the low rent roll, Oquendo avers that attempts by him to retain a management company proved fruitless. For the same reasons, Oquendo determined that any effort to retain counsel to aid him in his receivership of 333 would have been similarly fruitless. The foregoing resulted in Oquendo having to assume 333's management and some of its legal representation. In addition to communicating with HPD and DHCR with respect to violations assessed against 333, and filing a PAR with respect to the rent reduction order issued by DHCR, Oquendo states that he arranged to have substantial repairs performed at 333, which as detailed in the list appended to his affirmation, included the restoration of gas services to 333 and the installation of a new boiler thereat. 

In sum, Oquendo's affirmation and the exhibits appended thereto establish that he was appointed as receiver to a premises, which by virtue of years of persistent neglect had fallen into a deplorably bad state of disrepair. To make matters worse, the tenants were not paying rent and when they were, the rent was nonetheless nowhere near the sums necessary to repair 333 and address the legion of violations assessed against it. As such, it was clear that Oquendo could not retain a management company and, therefore, had to shoulder the burden of managing the premises himself. Accordingly, calculating his commissions pursuant to CPLR § 8004(a), which would only total $59,046.14, would be manifestly unfair since during his tenure he along with Decaro invested 352.5 hours, mostly dedicated to 333's management. Indeed, Oquendo provided 159 hours of his time to his duties as 333's receiver. Thus, the calculation of Oquendo's commissions pursuant to CPLR § 8004(b) is warranted.
However, insamuch as when a receiver engages the services of others to perform work he/she was required to perform as part of his/her duties as the receiver he/she is not entitled to any commissions for the work delegated absent court approval, the commissions sought for work done by Deraco is denied. Indeed, as the court in Niagara Life Ins. Co. noted with respect to any services that a receiver delegates to others absent court approval and for which she/he then seeks reimbursement, such reimbursement shall be denied (id. at 416). Again, a receiver may not be reimbursed for expenses that he/she delegated to others absent prior court approval (id. at 416).
Thus, the Court finds that upon applying CPLR § 8004(b) to calculate Oquendo's commissions on a quantum meruit basis, the invoice submitted by him demonstrates that the value of the service he personally rendered is reasonable and totals $103,350. Moreover, since a receiver is also entitled to expenses incurred by him/her the invoice evinces that Oquendo is entitled to $1,978.54 for expense. Accordingly, Oquendo is entitled to $105,328.54 for his role [*11]as 333's receiver.
However, to the extent that there is only $88,567.65 in the receivership account and generally any commissions should be limited to those sums, the Court must determine whether there exist special circumstances warranting payment of any commissions beyond the funds in the receivership account to Oquendo by plaintiff. In other words, the Court must determine whether plaintiff must pay Oquendo $16, 760.89, representing the difference between the commission to which Oquendo is entitled and the sums in the receivership account.
As noted above, a receiver's commissions are derived from the sums collected by him/her from the property to which he/she has been appointed (Pondview Corp. at 965; Sun Beam Enterprises, Inc. at 154; Long Is. City Sav. and Loan Ass'n at 840). However, upon the existence of special circumstances, the party who sought the receiver may be required to pay the receiver's commissions (Pondview Corp. at 965; Sun Beam Enterprises, Inc. at 154; Long Is. City Sav. and Loan Ass'n at 840). Like commissions, expenses incurred by the receiver are generally paid from the funds derived from the property entrusted to the receiver. However, when special circumstances exist, a plaintiff for whose benefit the receiver was appointed is also liable for a receiver's necessary expenses (Pondview Corp. at 965; Long Is. City Sav. and Loan Ass'n v Bertsman Bldg. Corp. at 840; Litho Fund Equities, Inc. at 15). Special circumstances exist when it is demonstrated that the receiver spent sums towards the maintenance of the premises, that said sums were judiciously spent, and that such expenditures were necessary and beneficial to the plaintiff for whose benefit the receiver was appointed (Pondview Corp. at 965; Sun Beam Enterprises, Inc. at 153; Long Is. City Sav. and Loan Ass'n at 840). 
On this record, to the extent that Oquendo spent all funds received by him to repair and maintain 333, there is no question that Oquendo spent all funds collected by him judiciously and for the benefit of 333 and therefore, plaintiff. Thus, there is ample evidence here that there exist special circumstances warranting ascribing liability for Oquendo's commissions to plaintiff. 
Nevertheless, although the requisite special circumstances exist, the Court, in the exercise of its discretion, finds that given the record, it would be manifestly unjust and inequitable to order plaintiff to pay Oquendo commissions in excess of the sums in the receivership account. 
To be sure, plaintiff's documentary evidence, which to a large extent is corroborated by Oquendo's evidence, establishes that it has come into possession of 333 at a substantial loss. Stated differently, plaintiff, who is owed $6,720,688.14 on the loans which gave rise to this action, was unable to sell 333 at the foreclosure auction and was thereby forced to purchase 333. Moreover, the documentary evidence submitted by plaintiff evinces that in addition to spending $466,239.21 for repairs at 333 while Oquendo was the receiver, it owes large sums of money in connection with 333, said sums directly attributable to the longstanding neglect that afflicts 333. Specifically, plaintiff owes HPD $98,000 for work it did to remediate the violations at 333. Additionally, both HPD and DHCR have issued orders whereby plaintiff is directed to ameliorate a series of issues at 333 under threat of civil penalties and fines. Lastly, as of October 14, 2024, 333 and therefore plaintiff owes DEP $436,576.72 for water.
Accordingly, the very same reasons which required Oquendo to perform extraordinary services while he was the receiver at 333 still exist and have now become plaintiff's problems. Given the sums that plaintiff will have to pay to rehabilitate 333, the loss it has taken on its loan to Realty, and the sums it owes to DEP , HPD and potentially DHCR, it would unjust and [*12]inequitable to hold plaintiff personally liable for any of Oquendo's commissions. Accordingly, Oquendo's commissions are fixed at $88,567.65, the sums in the receivership account.
Lastly, with respect to Oquendos' application seeking to be appointed counsel nunc pro tunc and be compensated for work performed by him in that capacity, such application is denied. "It is the rule that a Receiver who is a lawyer is expected to perform customary legal duties connected with his tenure" (Strober at 836). Accordingly, when the receiver is an attorney and fails to retain or have the Court appoint counsel for him/her, "[i]t is expected under such circumstances that the receiver will perform all of the ordinary legal services connected with his duties in consideration of the commission that he will receive; and that the employment of counsel is unnecessary" (Capone at 323; Husqvarna Vapenfabriks Aktiebolag at 89-90). For this reason, when a receiver seeks to have the court appoint counsel, nunc pro tunc, after the same has been retained and performed services, such relief shall be denied if the services performed by counsel should and could have been performed by the receiver (Bozewicz at 444).
To the extent that Oquendo relies on Sunrise Fed. Sav. & Loan Ass'n v W. Park Ave. Corp. (47 Misc 2d 940 [Sup Ct 1965]) and De Santis v White Rose Assoc. (152 Misc 2d 567 [Sup Ct 1991]) in support of his application seeking to be appointed counsel nunc pro tunc, this Court is unpersuaded nor bound by the foregoing persuasive authority. Instead, the Court follows the scant appellate authority available on this issue. In Capone, the court granted the counsel fees sough, but only after stating that
[t]he receiver is an attorney and no order was obtained authorizing him to employ other counsel. It is expected under such circumstances that the receiver will perform all of the ordinary legal services connected with his duties in consideration of the commission that he will receive; and that the employment of counsel is unnecessary
(id. at 323). Moreover, the fees were granted to counsel and not the receiver (id. at 323). In Bozewicz, the court declined to appoint the receiver as counsel nunc pro tunc because of "factual issues as to the necessity and reasonableness of the fee, including, inter alia, whether counsel performed duties that are customarily performed, and should have been performed, by the temporary receiver" (id. at 444 [emphasis added]).
Here, the foregoing case law militates against fees to Oquendo as counsel. Moreover, because the Court has calculated Oquendo's commissions on a quantum meruit basis, he is receiving compensation in excess of what is customarily awarded. Accordingly, on this record, where Oquendo is already being compensated for the work he performed as receiver, which includes, per his invoice, compensation for the legal work he performed, his application for his appointment as counsel, nunc pro tunc, is denied. It is hereby
ORDERED that Oquendo is awarded $88,567.65 in commissions. It is further
ORDERED that Oquendo pay himself $88,567.65 from the receivership account and thereafter close the same. It is further
ORDERED that upon the closing of the receivership account, Oquendo be discharged as receiver. 
ORDERED that plaintiff serve a copy of this Decision and Order with Notice of Entry upon all parties within thirty (30) days hereof.
This constitutes this Court's decision and Order.
Dated : March 21, 2025
Bronx, New York
HON. FIDEL E. GOMEZ, JSC